Judge Marshall
delivered the Opinion of the Court.
In the year 1822, Samuel Briscoe died, after having first made his will, which was duly admitted to record in the Bullitt County Court, and is as .follows:
“ Item 1st. I do will and bequeath unto my wife, Nan- “ cy Briscoe, all my real estate, during her widowhood, “ or until one of my children marries, which consists of “ eleven negroes named as follows, Nelson, &c. (to the “ number of eleven names,) also, all my personal and “perishable estate after my just debts are paid: to have “ and tq hold for her own particular usé and benefit, in “ raising and educating my three children, viz: Harrison “ Briscoe, Ruth E. Briscoe and Nicholas Briscoe; but if “my wife Nancy marry again, I do will and bequeath to “ her one third of my estate.
“ Item 2nd. When my first child marries, I do will and u bequeath that my estate be divided in the following “manner, viz: at that time, should my wife continue my “ widow, I do bequeath unto her, one third of my estate, “ and the balance to be equally divided between my “ three children.
“Item 3d. I do will and bequeath.all my notes bonds *158 «’and accounts to my wife Nancy, to appropriate to the « benefit of my just creditors.”
Nancy Briscoe, the testator’s widow, and Rodolphus Buky administered with the will annexed. And the widow having, in 1824, intermarried with Francis Brady, an order was made by the Bullitt County Court, at its December term, 1825, on motion of Brady, and purporting to be with the consent of Buky, the administrator, appointing commissioners “ to allot and set apart so much of the estate of Samuel Briscoe as is devised to said Nancy, his widow, agreeably to his will.”
The commissioners appear to have reported an allotment of six negroes to Brady, in right of his wife, as devisee.
In 1827, a judgment was rendered against Buky, as administrator of Briscoe, for nine hundred and ninety eight dollars; an execution thereon was levied on three negroes of Briscoe’s estate, other than those which had been allotted to Brady, and in September following, they were sold by the sheriff, and purchased by C. A. Wickliffe, who has had them in possession as his own ever since.
In 1834, Ruth E. Bi’iscoe intermarried with J. W. Simpson, being the first married of the testator’s children; and in July, 1836, Simpson and wife and Harrison and Nicholas Briscoe, the three last named being then infants under 21 years of age, brought this action of detinue, to recover from Wickliffe the three negroes purchased by him, as above stated.
The defendant pleaded non detinet, with leave to give special matter in evidence; and on the trial, the facts above set forth were proved or admitted; But the record of the proceedings of the County Court for the allotment of the widow’s portion of Briscoe’s estate, under the will, was objected to on the part of Wickliffe, as incompetent to prove a division, on the ground that the County Court had no power in the case, that the proceeding was ex parte, &c.
After the evidence, which has been substantially stated, was gone through, the plaintiffs moved the Court to instruct the jury, in substance, “ that if the three ne *159 groes ■sued for were part of the estate of S. Briscoe, and were not allotted to the widow, the title passed to the plaintiffs by the will, and the subsequent judgment and execution against Buky, the administrator, and the purchase of Wickliffe under them, present no bar to a recovery in this suit.”
But the Court refused to give this instruction, and, in lieu of instructions moved for by the defendant, instructed the jury that, “if Mrs. Briscoe, the widow, intermarried with Brady before the marriage of Ruth E. the daughter of the testator, the title to the slaves, upon the marriage of Mrs. Briscoe, passed to the administrator with the will annexed, and might well have been sold, in 1827, under the judgment and execution against the administrator, Buky, under which the defendant bought.”
To the giving of this instruction, and to the refusal of that which had been asked by them, the plaintiffs excepted; and a verdict and judgment having been rendered against them, they have appealed to this Court.
It is contended on the part of the appellants here: first — that by the will of Briscoe, two thirds of the slaves passed, on the marriage of his widow to them; second — that consequently, under our statute, which enacts that slaves shall pass by will as land, the personal representative never had any interest in them, and they could not be reached by judgment and execution against the administrator; and, third — that there has been such a division of the slaves, or at least, that the proof conduces to show such a division, as enabled them to maintain this suit in their own names, separately from Brady and wife.
It is contended on the other side, that the devise to the appellants depended on the uncertain contingency of the marriage of one of them, and could not take effect, to give a vested estate, until that event occurred; that, in the mean time, the two thirds of the slaves not devised to the widow, passed by operation of law to the personal representative, for payment of debts; that it was subject to sale under execution against him; and that such-sale made before the contingency happened, passed the entire property in the slaves sold, and there *160 fore defeated the expectant right of the appellants. It is further contended that, if the construction contended for by the appellants were correct, the County Court had no authority to make, nor the administrator to com sent to a division between them and the widow, and that the record of the County Court, offered in proof, is not such evidence of a division as to show that they can maintain the action of detinue in their own names exclusively, even if they have any title.
A testator-devis all his estate including 11 negroes during her widowhood) and one third of it if she married again — not saying how, in that event, the other two thirds should hut Reeling un another “item ” when 'the ^ first of his children estate be with she remained his widow, the balance equally among the children.— after the testator’s death, his and ten yeara a£ ter that, one (the drew married heU that, by was to devisero the children to take effect upon the widow’s marnage; the devise to them was contingent, depend-upon the marriage of one of them — mi event that might never haPPctl; consethe widow, by ^ two thirdsof the fo^widowhood, that portion,being slaves, and then undevised, passed to the adm’r, and as assets in his hands, was subject to an ex’on against him as administrator.
*160 We shall examine such of the questions made as seem to be material to a decision of the case, without regarding particularly the order in which they have been presented in the'argument.
And first, as to the true construction of the will we think it very clear that there is no devise to the testator’s children, either express or by necessary implication, of an estate to take effect upon the termination of foe widow’s estate by her own marriage. The only .... . ' , J disposition made upon that event, is the devise of one fojr(j to foe widow herself. It is argued, indeed, that ° ’ ‘ under the second clause of the will, which devises or directs that, when the first child marries, two thirds of the estate shall be divided among the three children, they had an interest which took effect immediately on foe marriage of the widow, as a remainder upon or after the first estate devised to her. But this cannot be admitted.
If there had been a general or immediate devise of two thirds of the slaves to the children, on the termina- . . . . . tion of the first interest given to the wife, with directions that a division should take place on the marriage of the first child, then the postponement of the division, or the uncertainty of its ever taking place according to the will, would not have affected the devise itself. Until the happening of the contingency on which the division depended, the children would be tenants in common (of two thirds,) as devisees. And the whole interest in foe slaves being devised, without any gap or interval , . . . , ; , r „ , , between the estate of the mother and that of the children, nothing could have passed to the administrator or ,. ° . r ,. ,. heirs as undevised. But there being no devise to the *161 children, except that which is contained in the devise or directions for a division, the devise itself of the slaves depends on the same contingency on which the division depends. They cannot, by any construction, be separated.' The devise itself, must therefore, be considered as conditional of contingent, and*-could not take effect, to give any vested interest or estate, until the happen- . ° , , . I, mg of .the contingency, which might never be.. And, as in case of such a devise of lands, the lands would descend to the heir, as undevised, until the happening of the contingency, (Baird vs. Rowan, 1 Marsh. 547; Fearne on Ex. Dev. 537,) we have no doubt that the slaves in this case passed to the administrator or heirs in like manner.
If there had been a devise that, on the widow’s marriage, 8 of the estate should go to the childre, to be divided among them when either of them should mar ry, the uncertainty whether either of them ever would marry, would not have affected the devise to them; till that event, they would have been tenants in common of the devise, which would have passed immediately to them, upon their mother’s marriage. But, as the will stands, the devise itself depends upon the same contingency as the division.
In opposition to the construction and effect here givto the will, it is argued that this devise should stand on the same footing, and be construed in the same way, as a devise of land to'A “when, or if, he attain the age of twenty one years;” in regard to which it is said to be well settled that the estate vests immediately, and that the dying under twenty one, is considered as a condition subsequent, on which the estate is to be divested. But in the cases which establish that the dying under twenty one is to be considered as a condition subsequent, there is not only a devise to A. when, or if, he, arrives at the age of twenty one, but also a devise over in case of A’s death before twenty one. And it is very clear,/rom the language of the Court in those cases, that this subsequent devise had great influence in determining the construction.
In the case of Edwards vs. Hammond, 3 Levinz, 132, the Court says, “upon the first words (which were a surrender to Á and his heirs if he arrive at twenty one years of age,) it seems to be a condition precedent; yet, upon all the words taken together, it is not a condition precedent, but a devise to A in the mean time, but to be defeated by condition subsequent, if he do not arrive at twenty one years of age.” -
In the case of Doe on demise of Hunter vs. Moore &c. 14 East, 603-4, Lord Ellenborough, in laying down the rule as established by the cases of Mansfield vs. Dugard, *162 1 Eq. ca. ab. 195; Edwards vs. Hammond, 3 Lev. 132, and Broomfield vs. Crowder, 1 New Rep. (3 Bos. & Pull.) 313, states it as relating to a devise “to A when he attains the age of twenty one, to hold to him and his heirs, and if he die under twenty one, then over,” &c.
In the case of Broomfield vs. Crowder, it seems also to be admitted that the first words implied a condition precedent; but that they were controlled by others, which showed the testator’s meaning to be otherwise. The rule, as established by these cases, does not therefore apply strictly to the case of a devise to A, if, or when, "he attains the age of twenty one.
It is true that the precise influence which has been given to the addition of a devise over if a A die before twenty one, is not very apparent, and therefore the rule has been sometimes stated or referred to as applicable 'to the devise when made without any such addition. And hence, because such a devise seems to be both future and contingent, an inference still more general has ’been drawn, with apparent support from this rule, that -a devise of lands, though by its terms future and cóntin•gent, may, in consequence of some rule applicable to 'the subject, vest an immediate estate. The rule is "founded upon the idea that there is evidence in the will, -of the testator’s intention; and is not to operate in itself as evidence of intention, except in cases where the same •evidence is furnished by the will, as that on which it was founded.
But if the rule may properly be extended to the ease of a simple devise to A, if, or when, he attains the age of twenty one, where there is nothing else showing that it was intended to vest earlier, it is upon a ground certainly not applicable to the present devise, and, as we are inclined to think, not applicable to a dewise upon any other contingency than that of the devisee’s arrival at a particular age. In such cases, the law, in ascertaining the intention of the testator, may regard him as looking only to the point of time when the event referred to would certainly happen, if at all, and not to the happening of the event itself; and as, in this point of view, the time may be ascertained with entire cer *163 tainty, the devise, though apparently dependent on a contingent event, may be construed as referring to a certain time which must come, and as, therefore, being in itself uncontingent, and sufficient to convey an immediate vested interest — the enjoyment of which may, or not, be postponed, as indicated'by other circumstances in the will. The devise in the present case, is- dependent solely on an event which may, or may not,, ever’ happen: and as there is no reference to any thing else but this uncertain event, it is impossible,, from the language of the devise, to infer that the testator intended that the estate should-vest before the contingency should, actually happen; or to fix upon any point of time when he might have intended or expected that it should vest.. There is no possible means of attaining certainty, but by awaiting the contingency itself; and therefore, no-time when the devise can take effect,.as a vested interest,, before the contingency happens.
This distinction between the arrival at a certain age,. and any other event, as marriage, when referred to by a testator, is clearly laid down and illustrated in the case of Atkyns vs. Hiccocks, 1 Atkyns, 501; and although there applied to a legacy, it seems to rest upon grounds-which render it entirely applicable to devises -of real estate. The same distinction is-stated in Fearne on; Contingent Remainders and Executory Devises, 553-4, note g. Butler’s edition.
The case of Goodtitle vs. Whitley, 1 Burrow’s Rep. 228, referred to with the other cases above noticed, does not stand upon the effect of a mere devise to A, if, or when, he attain the age of twenty one, and,.so far as it presents-that point, is no more decisive of this case, than the others which have been adverted to- The case of Enlaws’ Ex’r. vs. Enlaws, 3 Marsh., 228 — though resembling the one now before the Court- in some of its features — - is distinguishable from, it in several very essential particulars, which will be sufficiently obvious from-a mere recital of the devise. The testator, in that case, willed. “that his estate, real and personal, should continue undivided until his youngest daughter arrived at the age of twenty one years, or until all his children, were married; *164 and upon either of those events, that said property should be equally divided between his children and their mother, share and share alike.” It is impossible to don&t, upon this clause taken altogether, that the testator intended his estate to remain in the hands of his widow and children, or some of them, and for the direct benefit of all, from his death until the time when the division was' directed to be made. The whole property is expressly controlled and disposed of until the division, the provision for which clearly points out the devisees, if this- had not been certain before. And the division itself is limited to take place at a time which must have come, though the youngest daughter had died before the age of twenty one, and none of the children had ever married. The whole estate was clearly devised by the will; and therefore, the executor had no right to the eontrol or custody of the slaves.
Slaves, so far as respects last wills and testaments, are made real estate by statute, and pass by will as land; for most other purposes, they are regarded as personal property; and though (by another statute,) they descend, sub modo, to the heirs of an intestate, they are assets in the hands of his administrator, and the title of the heirs may be defeated, or confirmed, by him. They are, at all events, subject to the debts of a decedent (when other assets are wanting;) and the rights of creditors cannot be defeated by any bequest or devise of the slaves; they will be lia ble in the hands of the devisee as they would be in the hands of the adm’i1, if they were not devised ; and they may, perhaps, be so devised as to be accessible to creditors, in part as assets in the hands of the adm’r, ex or, or heirs, and in part as land in the hands of devisees.
*164 Being wrell satisfied, from a consideration of the provisions o-f this will, that it neither expressly devises any interest to the plaintiffs to take effect on the marriage of the widow, nor sufficiently shows that the testator intended to devise any interest to them on that event; and being also satisfied that, there is no rule of construction established by adjudged cases, by which, under a devise of land purely contingent and conditional, the devisee could be adjudged to take a vested estate before the happening of the contingency — a rule which would be inconsistent with itself and with all the doctrine of contingent estates; and being, moreover, clearly of opinion that the only devise to the plaintiffs — viz. that which is contained in the direction that two thirds of the estate shall be divided between them when one of them shall marry — is purely executory, and vested no estate in them until the marriage of one of them; and that, on the marriage of the widow, the two thirds of the slaves not devised to her, passed to the custody and control of the personal representative: the next enquiry is, whether the estate thus in his hands, was subject to be sold under a judgment against him for a debt of the testator; and whether a sale under such judgment, would pass the entire interest in the slaves sold, or would be *165 subject to be defeated by the happening of the contingency on which the devise to the plaintiffs was limited to take effect.
But the interest of the devisees in a contingent devise of slaves —being of uncertain, unascertainable value, as the contingency may happen soon, or never— (though it might descend to the heir of the devisee,) would not be subject to sale under execution. And— Where slaves were devised (as ante p. 157) to a widow for widowhood, or until one of the children married,and then to them; and the widow married before either of the children, and the slaves, thereupon,passed to the administrator with the will annexed; and an execution against the testator’s estate was levied upon themas assets in his hands and they were sold by the officer: held, that the sale passed the entire property to the purlute right, and he^divested of it by the children, togonoyth(one”s marriage,) upon were to go them, did afterward happen.
*165 This is a new question, growing out of the anomalous character impressed upon this species, of property by the statute which declares that slaves shall be regarded as real estate, so far as respects Jast wills and testaments, and shall pass by will as land. Independently of this statute, they are, for most purposes, regarded as personal property; and although,-by another statute, they descend, sub modo, to ,the heirs of an intestate, they are assets in the hands of the administrator, and the interest of the heirs may be defeated or confirmed by him. Except so far as the will operates upon them, they certainly are assets, and liable to sale under a judgment against the personal representative.. Does the fact that the will contains a contingent, executory devise, which may never take effect to give a present vested estate to the devisee, limit, or in any wise affect, the interest which the creditor may reach? • The debt itself commands 'the entire interest or right of a decedent in a slave or slaves, whether devised or undevised. The testator has no right to place his title, or any part of it, out of the reach of the creditor’, vvhose right to subject the whole interest, if requisite for his debt, is perfect. — ■ But how is he to assert this right?." He sees the administrator or executor — who is set. up by the law to represent the decedent in respect of. his debts and personal property — in possession of the slaves, with an interest or power, unlimited, except by a contingency which may never happen. He may know^ from the will, that the slaves, if unaffected in the mean time by any title superior- to the will, would, on the happening of the contingency, pass as lands, and therefore could not after-wards be reached, but by proceeding against the devisee. But, in their condition, as actually existing at the time, they are personal property, accessible through the administrator, and they may continue so as long as they are property at all. It seems to us that while they are in this condition, and there'is no other subsisting right to them, they should, so far as the satisfaction of *166 the debts requires, be considered as merely personal property, and as entirely subject, in that character, to the creditor’s remedy against the personal representative.
It is true, the contingent or executory devise to the children could not be defeated by a title under the will y but this does not prove that it may not be defeated by a title superior to the will. The testator cannot, by his will, put his slaves out of the reach of his creditors.— TT . , , . , He may anect, to some extent, the remedy by which they may be reached. He may make them accessible only as land, by devising an immediate estate in possessi°n5 or by devising an immediate vested interest, to be enjoyed in future, leaving the slaves to pass, in the mean t'me> by operation of law, to the executor, he may perhaps make them in part accessible as land only the hands of the devisee, while they are in part access^e> at the same time, through the executor, as persona[tyt And this is conceding as much to the effect of the statutory declaration, that slaves shall pass by will as land, as a regard, either to the objects of that particular statute, or to the general purposes of the law and the requisitions of justice, will allow.
The testator cannot devise his slaves away from his creditors, wholly or partially. He cannot destroy, or seriously impair, their remedy for subjecting the whole property in a slave or slaves. He can only take away the remedy through the personal representative, by setting up some other person against whom, as devisee, the creditor may have remedy to-reach the slaves; and only so far as he gives the one remedy, can he lawfully destroy the other. But here is a devise which, until the happening of the contingency, gives no interest which would render the devisees, as such, liable to a judgment, or which could be sold under a judgment,- if one were-obtained. Such a mere possibility, though transmissible-by descent, and perhaps assignable in equity, is not vendible under execution, and therefore is not assets by devise, and no judgment at law could he founded upon- it. It follows that, so far as this mere contingent interest is concerned, no remedy being furnished by the will, it must be accessible by the usual remedy through the *167 personal representative. The whole property in the slaves is then, for the purpose of satisfying debts, to be considered as represented by him, because there is no body else to represent any part of it; because the slaves, until the contingency happens, are personal property, and are not impressed with the character of land to any extent; and because, although there are persons named to take as devisees on the happening of the contingency, they take nothing until then: there is until then, no operative devise, and no persons who have a right to consider themselves, or can be regarded by creditors, as representing any interest in the slaves, as devisees. If the devise be to a person not in -esse, must the creditor wait until the devisee is born before he can pursue his remedy to full satisfaction? This would not be contended for. If then, there be a person in esse, who is named as devisee, but who has no present interest in respect of which he can be made liable to a judgment, or which can be reached through a judgment, must the creditor wait for full satisfaction until the contingency happens on which such an interest may arise? Must he sell a part of the right of property, and leave unsold another part which is necessary for his satisfaction? Must he sell the right of the slave until the contingency happens, as personal property, and then institute pro-. ceedings against the devisee, to sell the remainder as real property? Or must he postpone his entire remedy until the contingency happens? ' This last alternative could not be contended for; and the others seem, not only to be entirely unreasonable, but, if practicable, would be unjust and oppressive to the heirs and distributees, if the contingency should never happen, or if it should happen, to the devisees themselves. For as the contingency might happen within a very short period, or might never happen at all, it is manifest that, to sell the slaves subject to the contingency, would be to sell a right of which the value would be wholly unsusceptible of any fair or reasonable estimate, and would expose to sacrifice, upon the merest speculation as to possibilities, the interests of the heirs or devisees, who being ultimately entitled to whatever might remain after *168 payment of debts, or ultimately liable for whatever debts might remain unpaid, are interested in having the property sold at its fair value. And it is to be observed that, as to their real interest, if the sale be necessary for the payment of debts, and be at a fair value, it is immaterial to them whether it be effected by proceeding against them, or against the personal representatives.— But it is eminently their interest, and' should be the object of the law, that the sale should be at a fair value, and therefore, that such an interest should be sold as is capable of a fair and reasonable estimate. Moreover, it is contrary to the policy of the law to sell an uncertain interest which cannot be fixed or estimated. And the same reason which prohibits the sale of a mere possible interest, which may or may not arise in future, applies, though obviously with much less force, to prohibit the sale of a present interest which may be defeated in a day, or may last for ever, and which is determinable upon a contingency as to which no reasonable means of calculation can be resorted to. This consideration should not, perhaps, prevent the sale of a present interest actually in possession, but it is entitled to great force in determining, by construction, the operation and effect of the statutory declaration which has been referred to.
It will not do to say that the creditor may go into chancery, and, by bringing the future devisees before the Court, effect a sale which will bind their right when the contingency happens. He is not bound to go into chancery, unless the testator had the right of hindering, delaying and defeating his legal remedy by devising the slaves, not for the payment of debts. He is not bound to go into chancery merely for the sake of the possible devisees; and to assume that he is compelled to resort to that tribunal to obtain justice for himself, is to admit that his remedy has been obstructed by the devise in a manner not authorized by law.
The right of the contingent devisees to go into chancery, while the proceeding against the personal representative, or against the slaves in his hands, is incomplete, for the purpose of preventing injustice or fraud, is *169 not involved in the argument. If slaves are to pass by will as lands, to devise them out of the reach of creditors, is in law a fraud#
A widow designated in a will as sole ex'x, might feline acting in that might be an adm’x nexed, and might act, jointly with another administrator, in the latter capacity. The acceptance of the appointment, would not make her executrix in fact, but would 1‘ather bo evidence of her renunciation. Nor would the appointment of the co administrator be void, or irregular. '
We conclude, therefore, that a contingent, future devise, like the present oney does not affect the character of the slaves as property, so as to change the remedy of the creditor of the decedent, before the contingency happens; that while they remain in the hands of the personal representative, the future possible interest of the devisees is, for the purpose of paying debts, merged in' the ■present estate in possession; that for this purpose the slaves are to be considered as personal property, fully represented by the executor or administrator, and fully subject to sale under a judgment and execution against him; that, as between the purchaser of a slave under such sale, and the contingent devisees, the question of the necessity of the sale is concluded, and that the purchaser who has purchased the entire right, holds it freed from the contingency.
The cases of Woodyard’s Heirs vs. Threlkeld, 1 Marsh. 10, and Head vs. Perry, 1 Mon. 255, showing the extent to which administrators represent all interests in slaves under the intestate, have an evident bearing in favor of the principles now decided. The case of Chastine vs. Ford, 5 Litt. 269, is more directly and strongly in point, as showing that the right of future freedom, expressly devised, by will, to a slave, was destroyed by setting aside the will, in a contest with the executor, before the time appointed for the slave to .be free had arrived; on the ground that he could not be a party, and that his rights were represented by, or.merged in, those of the executor.
It is contended, however, that the, will makes the testator’s widow, Nancy Briscoe, executrix, in effect, though not in name; that therefore, the appointment of Buky could only be supported by showing that she renounced the executorship; that, as she assumed the administration with the will annexed, she not only did not *170 renounce, but, in truth, took on herself the execution of the will, and is executrix; and that, on both of these grounds, the appointment of Buky is void, and the judgment and execution against him wholly inoperative to affect the title of the plaintiffs.
Two thirds of the a widow passed to the adm’r, on her marriage-was then proper, county court showing a division, is evidence of the right of those claiming the part allotted to the adin’r, to sue for them with out joining the widow as.pl’ff.
The principle settled, as in lieu of The principle settled, as above, does not affect the right of the devisees to obtain compensatheir devise, or-to question the conduct of the adm’r in permitting the slaves to-be sold.
*170 In answer to this argument, it is sufficient to say, that the fact that Buky and the widow administered with the will annexed, was agreed by the parties, and not attempted or required to be proved by the record. We, therefore, must assume that the administration was properly granted — if by possibility it could be done — to these two. And certainly, it is easy to conceive that >the widow might have refused to execute the will alone, .or might have been unable to give bond; either of which •would have authorized the granting of administration, with the will annexed; and certainly her inability to ■give bond alone would not have excluded her from the •right of administering with another; nor would her taking the administration in that way, necessarily exclude 'the other administrator. Besides, her taking the ad•ministration with the will annexed, and jointly with .another, implies a renunciation, or a refusal to qualify •■as executrix.
The decision of these points renders it unnecessary to decide the question as to the division. We will, however, observe that, under the construction' of the will adopted'by us, that division might and should have been -made between the widow and administrator; and as the record of the County Court tends to prove that such division was made, we should not deny the right of the appellants to sue in their own names, separately from the widow, if they had any title; especially as it is manifest that the appellee himself holds under the same division, or at least holds -under some division, by which the widow’s interest was removed from these particular-slaves.
It seems proper further to remark that the principles settled in this opinion do not affect the right, or the remedy, of the devisees, to obtain compensation for the subjection of these slaves to the payment of the testator’s debts.
*171 Their rights, in this respect, so far as other devisees are concerned, are the same as if the slaves had been subjected by suit against themselves as devisees, after the happening of the contingency, on which their interest depended. And they have doubtless the same right as against the administrator, to question the necessity of the sale, as if they had been heirs, (as they were in-fact when it was made,) and not devisees..
The opinions of the Circuit Court, in- giving and refusing instructions, being insubstantial conformity with, this opinion, and the evidence having conduced sufficiently to prove the facts referred to in the instruction-given, we perceive no error in the proceedings, to the prejudice of the appellants; and the judgment is therefore affirmed.