# Danforth *vs* Talbot's Administrator, &c.

## ERROR TO THE WASHINGTON CIRCUIT.

CHANCERY.

*Case* 152.

7bm623
110 906

*Wills. Devises. Remainders, vested and contingent.*

CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

*October 2.*

By the will of Cyrus Talbot, admitted to record in September, 1833, the testator, intimating clearly the intention to dispose of his entire estate, devised to Paul I. Booker all the estate he might die possessed of, in trust and to be subject to the dispositions made in the will, as follows: By article 2, $5,000 or one fourth part of the money, &c., to be invested in stock, &c., and the interest as it accrues, to be paid to testator's daughter, Ann Richmond, during life, and then at her death to her children; but should she not intermarry and have issue, then at her decease, the principal shall descend to the surviving issue of her brother and sisters, in proportion to numbers. 3. Five thousand dollars or one equal fourth, &c. I give and bequeath to my son Cyrus, to be invested and regulated as in case of my daughter Ann R. by article 2, and the interest on the same as it accrues, to be paid for his education and support, when should he arrive at twenty five years of age, the principal is to be paid over to him. By the 4th and 5th articles he makes a bequest of $5,000,

The will of Cyrus Talbott, the questions presented and decree of the Circuit Court.

7m623
91 555

to be invested in like manner, for the benefit of each of two married daughters, the interest to be paid to the daughter during life, and then the principal to her surviving children.

6th. The farm whereon I live, commonly called Snug Harbour, the lands purchased, &c. &c., together with my household and kitchen furniture, stock, &c. &c., to the use and for the support of my wife Alice, for and during her natural life ; the following reservations in favor of my daughter, Ann R. who shall be entitled to a room, &c. &c., so long as she may remain single.

"7th. On the decease of my said wife, the above described farm, &c. &c., shall become the property of my son Cyrus, when arrived at the age of twenty six years, (excepting the reservation in favor of Ann R.;) but after providing for the support and comfort of his mother, he may be entitled to all the profits arising from the same, except the reserved rights of his sister, Ann R."

The succeeding clauses dispose of his slaves to his wife during life or widowhood, to be divided at her decease, among the testator's children, deducting advancements in slaves, and after stating certain advances in money to be deducted from the respective portions on account of which they were made, the will appoints P. I. Booker executor, who renounced the executorship but was qualified as administrator with the will annexed.

It appears that the testator's widow survived him but two or three years, that the daughter Ann R. intermarried with Danforth, and that Cyrus Talbot, the son, having been let into the possession of the farm called the Snug Harbour, sold the same after he had attained the age of twenty one years, to Danforth, for the sum of $6,488, and executed his bond for conveyance of the title, and that he afterwards died unmarried, before he attained the age of twenty six years. This bill was subsequently filed by Danforth, (his wife uniting with him,) for the purpose of obtaining a conveyance of the land sold to him by Cyrus Talbot, the devisee. The trustee appointed by the will of Cyrus Talbot the elder, and the personal and real representatives of each of the Talbots, were made defendants. And the Court, on hearing the cause, having

dismissed Danforth's bill, the sole question presented for our consideration is, whether under the will which has been set out, Cyrus Talbot the younger, having died under the age of twenty six years, had a vested fee simple in the land, or whether his arrival at that age was a con. dition precedent to the vesting of the estate.

This question has been considered both with reference to the evidences of intention to be gathered from the provisions and language of the will, and to the effect which has been given by adjudged cases to particular expressions used by the testator. The great object being to ascertain and effectuate the intention of the testator, his language used for the very purpose of conveying that intention, furnishes of course, the appropriate and peculiar means of ascertaining it. But besides the resort to rules of construction for interpreting the intent of particular words or clauses, the certainty and uniformity which should prevail in the modes of creating estates and in the rules applicable to them, seem to require that when a will is found to use words and phrases ordinarily used in the creation of estates, and which by the course of judicial decisions upon wills, have received an established interpretation and effect, these decisions may not only be resorted to but should be adhered to in their application to the particular case, unless the obvious intention of the testator would be violated by so doing. Such decisions being themselves presumably founded on an ascertainment of the meaning of the particular words or phrases, and of the intention with which they were used, and being directed to the effectuation of that intention, according to the rules of law, become in point of reason as well as of law, legitimate sources of exposition.

The precise question in the case is, whether the testator intended to give Snug Harbour to his son Cyrus, certainly and in all events, or whether he intended to give it only upon the contingency of his living to be twenty six years of age. If the gift was certain, though to take effect in enjoyment at a future period, it vested an immediate interest or estate in remainder, which would have passed to the heirs of the devisee upon his death before the period of enjoyment, and of which he might dispose

In the construction of wills the great object is to arrive at the intention of the testator. The language used furnishes an appropriate and peculiar means of ascertaining that intention, which language is to be understood according to the interpretation that such terms may have received in judicial determinations on wills, unless the obvious intention should be thereby violated.

before that period, by will or contract, if competent by the general laws to perform such an act. This is the legal consequence attaching inseparably to such a devise. If the interest or estate vested, the disposition or transmission of it from the devisee, could not have been prevented by the testator's desire or intention on the subject, unless that intention were so expressed as to subject the interest to a condition or limitation by which, in a certain event, it should be defeated, and pass under the will in a differeet direction. The intention of the testator on such a subject, may be wholly ineffectual, either because he has not made sufficient provision for effecting it, or because it is, in view of the law, illegal or inconsistent with the actual provisions of the will.

If as contended, it is fairly deducible from the entire will, that the testator did not intend his son Cyrus to have the power of disposition until, and unless he arrived at the specified age, such intention, if not specifically and properly carried out, could at most, form only one of the considerations to be taken into view in giving construction and effect to the particular devise. If that gives a vested interest, the mere inference of an intention to withhold the power of disposition, can have no operation. Conceding the existence of such an intention, the question would be, what mode did the testator adopt for its effectuation? And as he may have supposed, and probably did suppose that his object in this respect, was secured by the devise of the entire estate to a trustee, although he might give a certain interest to his son, not to be enjoyed in possession until a future time, the assumed intention with respect to the power of disposition is entitled to little if any weight in the interpretation of the devise to the son.

But this assumed intention is found no where unless in the devise of the whole estate to the trustee, and in the reference to the age of the son in the particular devise in question. Nor is it shown by this latter devise, except by construing it to be contingent, which is the very matter in dispute.

Leaving out of view the reservation in favor of the daughter, Ann R., which cannot affect the present ques-

tion, the whole will, so far as it relates directly to the Snug Harbour farm, presents the case of a devise to a trustee for the following purposes, viz: to the use of testator's wife for life for her support, and on her death it shall become the property of the son Cyrus, when arrived at the age of twenty six years, with the right in the mean time, of taking the profits after or beyond a comfortable support to his mother. It is said that the words "the said farm shall become the property of Cyrus when arrived at the age," &c., amount in effect or are equivalent to saying it shall not become his property until he arrives at that age. But suppose omitting this reference to age, the testator after devising the use of the farm to his wife for life, had said, and when she dies or at her death, it shall become the property of Cyrus. This would clearly have been a postponement of the time of enjoyment only and Cyrus would have had a vested remainder from the time of the testator's death. In that case the words, "shall become the property of," would give a present interest to be enjoyed in possession when the wife should die; and neither those words themselves, nor their connection with the future event of the wife's death, by the adverb "when," would be understood as postponing any thing but the enjoyment. Why then should they have a different meaning when connected with the future event of the devisee's arrival at a particular age? The uncertainty of the event referred to, can only affect what is made to depend upon its happening or not happening, but cannot, in reason, give to the operative words of the devise, a negative import which they would not have if connected with any other event, nor prevent the implication which they would otherwise carry with them of a present interest, to become vested as to enjoyment in future.

And although the event referred to, that is, the arrival of the son at the age of twenty six, must, when abstractly and precisely considered, be regarded as uncertain and contingent, must it be assumed to have been so regarded by the testator? He evidently did not regard it as contingent. He speaks of it as a thing certainly to happen. He does not even say, "if he shall arrive, &c., but when arrived at the age of twenty six years;" and he makes

no devise over upon the event not happening, as he would almost certainly have done if he had regarded the happening of the event as uncertain, or its not happening as a contingency which would give a different direction to the estate. It is to be observed too, that the event of the devisee's attaining a particular age, is unlike those events, such as marriage, with regard to which there is an uncertainty, not only as to their ever happening, but also as to the time at which they will happen, if at all. Here the event must happen, if at all, at a fixed period, well known to the testator. And as he seems not to have doubted but that his son would live until that period, and has made no provision for a different event, we should more probably violate his intention and his own understanding of the language used, by regarding it as a contingency than by considering it as he probably did, as fixed and certain:

This distinction is referred to in the case of *Briscoe's devisees* vs *Wickliffe*, (6 *Dana*, 162–3,) where it is said in reference to a devise to A. if or when he attains a certain age, that the law, in ascertaining the intention of the testator, may regard him as looking only to the point of time when the event referred to would certainly happen, if at all, and not to the happening of the event, and that the devise might be construed as referring to a certain time which must come, and thus being uncontingent be effectual to convey an immediate vested interest. The case of *Atkyns* vs *Hiccocks*, (1 *Atkyns*, 501,) not now before us, and (*Fearne on Remainders*, 553–4.) are referred to as sustaining this distinction. The last authority shows that there are cases in which the law considers the event of the legatee's attaining a certain age as fixed, and not contingent; and supposing the principle to be founded on a reference to the testator's intention, it would seem to be as applicable to the case of a devise as to that of a legacy.

But there is still another circumstance in this devise, which is entitled to weight, which is, that Cyrus, the son, is entitled, from his father's death, to so much of the profits of the farm as may remain after yielding a comfortable support to his mother and sister. He might thus

DANFORTH
*vs*
TALBOT'S AD'R.

become, and did in fact, become entitled to all of the profits before his arrival at the age of twenty six; and it is only in reference to the termination of the title and control of the trustee, that the testator uses the peculiar language, the farm "shall become the property of Cyrus when arrived at the age of twenty six years." The profits and use might be entirely his before, but at that time (his mother being dead,) the estate was to be absolutely his, in title and possession. And as it is given to no other person and no disposition made of it in the event which has happened, of his death before the period referred to, we think the clear inference as to the intention of the testator and the import of the clause, is that the farm, subject to the interest of the wife and daughter, is devised to the son Cyrus, postponing the full and absolute enjoyment until the death of his mother and his arrival at the age specified.

The construction that the testator intended to give to Cyrus the entire fee simple in this land, subject only to the particular interests carved out of it, is supported not only by the fair import of the clauses relating particularly to it, but also by a view of the entire will, and a comparison of its provisions: 1st. The testator intended to dispose of his entire estate, and evidently believed he had done so by this will. But this is only done upon the supposition that he gave and intended to give the farm to Cyrus unconditionally. 2d. In giving the pecuniary or stock legacies to his daughters, he follows them up in each case until the death of the daughters, and then disposes of them finally. But in the similar legacy to Cyrus, he only attempts to control it up to the time when Cyrus attains the age of twenty five years. And although in directing the payment to be made, the will uses the expression "when should he arrive at twenty five years of age," &c., and the phrase imports a condition more certainly than one is imported in the devise of the farm. Yet as the legacy is first given in positive terms, and this apparent condition relates only to the time of payment, the legacy was unquestionably vested. And the case is precisely the one described by Fearne, 553-4, where the time at which the legacy is payable, depends for its hap-

The testator devised the farm on which he lived, &c. household and kitchen furniture, stock, &c. to the use and for the support of his wife Alice, for and during her natural life—his daughter R. to be entitled to a room, &c. so long as she remains single.— On the decease of his wife, the farm, &c. to become the property of his son Cyrus, when arrived at the age of 26 years; but after providing for the support of his mother, Cyrus entitled to all the profits arising from the farm, except the right reserved to R. Held that Cyrus had a vested right at the death of his father, in the profits as well as land of which he could dispose after the

DANFORTH
vs
TALBOT'S AD'R.

age of 21—not a
contingent estate
depending on his
arriving at the
age of 26 years.

pening, "on an event which the law for this purpose considers certain and fixed, as the legatees attaining a certain age." Then this intention in favor of Cyrus being ascertained with respect to the legacy, why should not the words indicating the time when the farm is to become his property, being less calculated to express an uncertain contingency be construed as referring to an event fixed and certain in the consideration of the law as it was in that of the testator. 3d. From the care with which the testator controls the pecuniary legacies to his daughters up to the time of their deaths, and then disposes of them, it may be assumed that if he intended the devise of Snug Harbor to Cyrus, to be dependent upon a condition which might fail by his early death, he would not have left the estate to fall to his daughters without control, but would have secured it to them for life, and their children afterwards, as in case of the legacies in the event of the death of Cyrus without children. And 4th. If the devise is contingent, to take effect only in the event of Cyrus living to be twenty six years of age, the consequence would be, that his children, had he left any at his decease, would not have inherited the land from him, but would only have had an interest of one fourth as heirs of the testator. A consequence which we cannot presume to have been intended, but which we must suppose would have been provided for if the devise to Cyrus had been intended to be contingent, as the means of preventing a rash or premature disposition of the estate by him.

Passing from the considerations arising on the face of the will, we find the adjudged cases fully sustaining the construction and effect which we have given to the devise in question. In addition to the cases in which, after a devise to one if or when he shall attain a certain age, there was a devise over if or in case he shall die before attaining that age, and in which the condition has been adjudged to be a subsequent one, by which the estate would be defeated and pass over, and not a precedent one, to happen before the estate would vest under the devise, to which alone, with one exception, the attention of the Court seems to have been drawn, in the case of *Briscoe's*

*devisees* vs *Wickliffe*, (6 *Dana*, 162,) we find a train of decisions, in which, although there was no such devise over, the first devise in similar words has been held to be absolute and not contingent, and to give a vested interest. The cases in which there is a devise over, are *Edwards* vs *Hammond*, (3 *Leigh*, 132;) *Stocher* vs *Edwards*, (2 *Shower*, 398;) *Doe, on dem. Hunter* vs *Moore*, (14 *East*, 603-4;) and *Broomfield* vs *Crowder*, (1 *N. Rep.* 4 *Bos. and Pul.*, 313.) In the case of *Briscoe's devisees* vs *Wickliffe*, (6 *Dana*,) it seems to have been inferred, from these cases, that the rule or inference that the devise was not contingent, but vested an immediate interest, was to some extent dependent upon there being a devise over, on failure of the condition. But upon further investigation, we are satisfied that the principle to be deduced from all the cases, is that the apparent condition or contingency in the first devise, is held not be a condition, but only a designation of the time when the remainder is to vest in possession, and that the failure of the event referred to in the first devise being made the condition of the devise over, thus becomes with respect to the first devise a condition subsequent. So that if there is no devise over, there is no condition either precedent or subsequent annexed to the first devise. The cases of both the classes above mentioned, are collected in (*Fearne on Remainders*, 242 *to* 246,) as illustrative of the principle that a remainder is sometimes limited in words which seem to import a contingency, though in fact they mean no more than would have been implied without them; or do not amount to a condition precedent, but only denote the time when the remainder is to vest in possession. Of the cases in which there was in substance a devise to one if, or when, he shall arrive at a particular age, and no devise over if he did not reach that age, the first is *Boraston's case*, (3 *Co. R.* 19,) where the devise was to A. and B. for eight years, remainder to testator's executors until such time as H. should accomplish his age of twenty one years, and when the said H. should come to his age of twenty one years, then the testator willed that H. should enjoy the lands to him and his heirs forever. It was decided to be nothing more

than a devise to the executors until H. attained the age, &c., remainder to H. in fee, and that the adverbs of time when and then, do not make a condition precedent. The cases of *Mansfield* vs *Dugard*, (1 *Eq. Ab.* 195 ;) *Goodtitle* vs *Hayward*, (1 *Burrows,* 228,) *and Doe dem. Wheedon* vs *Lee,* (3 *Durn. and East,* 41,) are in substance the same. It is remarked in a note to *Fearne, page* 242, that in all of them there was some intermediate devise or disposition of the estate, or the rents and profits either to a stranger or for the devisee's own benefit, till the time at which the devisee was to take the estate; and that the cases appear to have been determined upon that circumstance. And it is intimated as the opinion of Mr. Fearne, that a simple devise "to B. and his heirs and assigns forever, when he arrived to the age of twenty one years," would not be good. But even if this be so, the decisive circumstance referred to is present in this case, the entire intermediate profits being devised to the wife, the daughter and the principal devisee himself. Some of the cases last cited, to which we add *St. White* vs *St. White,* (1 *Black. Rep.* 519,) and *Doe* vs *Norvell,* (1 *Maul. & Selw.,* 334,) are scarcely distinguishable in any important circumstance, from the one now before us. But it is deemed unnecessary to protract this opinion by further detail.

Upon the whole, we are satisfied that Cyrus Talbot the devisee, took a vested estate in remainder by the devise, which he had a right to sell at any time after he became twenty one years of age, and consequently that his contract with Danforth was effectual to bind the title as derived from Cyrus Talbot the elder, and that upon the merits as now appearing, a conveyance should have been decreed accordingly, if the suit had been in proper state of preparation for final hearing.

But the personal representative of Cyrus Talbot, the devisee, was a necessary party to contest the payment of the purchase money, and his devisees might not be improper parties.

Wherefore, because of the defect of parties, the decree dismissing the bill absolutely, is reversed, and the cause is remanded, with directions to allow the complainants

to bring the proper parties before the Court, and for fur-
ther proceedings and decree consistent with this opinion.

C. A. *Wickliffe* for plaintiff; *Morehead & Reed* and
*Loughborough* for defendants.