*268 Opinion op the Court,
by Judge Owsuey.
THIS was an action of trespass, assault and battery, and false imprisonment, brought against Alice Chasteen, by Daniel Ford, a man of colour, to recover his freedom.
Chasteen pleaded two pleas; to each of which Ford filed a replication. An issue was made up to the country on the first plea, and Chasteen rejoined specially to the replication which was put in by Ford to the second plea.
To the rejoinder Ford demurred, and judgment was rendered by the court, sustaining the demurrer.
*269 The issue to the country on the first plea was then tried, and verdict and judgment recovered by Ford.
To reverse that judgment, Chasteen has prosecuted this writ of error.
The assignment of errors questions the decision of the court upon the demurrer.
The demurrer may be considered as admitting the following facts:
Whilst a widower and having two children, Lewis Chasteen, in 1800, made his will, directing that all the slaves of which he died possessed, should be emancipated; the males at their arrival to the age of 25 years, and the females at the age of twenty-one. In this will the testator made no mention of any child he might thereafter have. He afterwards married a second wife, and died, leaving several children by his second marriage. At the time of his death, Daniel Ford, the plaintiff in the court below, was a slave and belonged to the testator, and was under the age of twenty-five; but he arrived at that age before the Commencement of this suit.
After the death of the testator, the executors named in his will, presented it to the county court of Hardin county, where it was proved and admitted to record in 1814. The children of the testator by the second marriage, afterwards exhibited their bill in equity, against the children by the first marriage and the executors, alleging the invalidity of the will, and praying the decision of the court thereon. The cause finally came on to be heard, and a degree was pronounced against the validity of the will. During all this time, Daniel Ford was under the age of twenty-five years, and was not made a party to the suit brought by the children of the second marriage, to set aside the will.
Whether or not, as a legal consequence from these facts, Ford is entitled to his freedom, is the only question presented for the determination of this court.
If he be entitled to his freedom, he must have derived the right from the will of Lewis Chasteen, to whom he formerly belonged. It was through that will Ford asserted his right, and it was under the will his freedom was attempted to be maintained in argument.
Were the question of right governed exclusively by the import of the will, we should have no difficulty in pronouncing Ford a free man. He had arrived at the age of twenty-five years before the commencement of *270 his action in the court below, and the will expresslyde-dares that he should be emancipated at that age.
But the will has been declared to be inoperative by the decree of a court of equity, and that decree was, in argument, contended to be conclusive in the present contest. The decree was pronounced by a court possessing competent jurisdiction over the subject matter, and would, no doubt, be conclusive between the same parties, upon the same point, in all courts of co-ordinate jurisdiction.
Ford, however, was no party to that suit, and'it was insisted in argument, that, as to him, the decree can have no operation in this contest.
But it should not be forgotten, that, at the time the decree was pronounced, Ford had not arrived at the age to which, by the will, he had to arrive before he was entitled to his freedem. He could not, therefore,have been regularly made a party to that suit; and the failure to make him a party, cannot be admitted to render the decree inoperative as to him. The will of Ch asteen made no disposition of his slaves before they arrived at the respective ages mentioned in the will.1 The right of possession to the slaves, as well as the chattels of the testator, must, therefore, upon the death of the testator, have passed to the executors, upon whom the care and management of the slaves and chattels devolved, and to whom, as respects that description of property, the defence of the will exclusively belonged.
Hence we infer, that, as respects the slaves mentioned in the will, the executors were the only necessary parties to the suit brought in equity to set aside the will, and consequently the decree pronounced in- that suit, to which they were parties, must be conclusive against the right asserted by Ford under the will.
The demurrer of Ford to the rejoinder of Chasteen, ought not, therefore, to have been sustained.
From this opinion Judge Mills dissents, conceiving that if the plaintiff below could not have been made a party to the chancery suit, it is clear that it is no evidence against him; and that the revocation of a will in part or the whole, by the birth of after-born children, under the third section of the statute of wills, does not exist in cases of emancipation, and that such revocation is totally taken away and repealed in this respect, by the twenty-seventh section of the act concerning slaves,. *271 2 Dig. 1155; and that no after-born children can claim an interest in slaves emancipated by the will, but are barred from so doing by the latter act.
A majority of the court are, however, of opinion, without intending to decide what effect the birth of after-born children would have upon slaves emancipated by will, that the decree of the court of chancery is conclusive against the validity of the will, and that the .court erred in its decision upon the demurrer.
The judgment must consequently be reversed, the cause remanded to the court below, and a judgment there entered in favor of Chasteen upon Ford’s demurrer.