<hr/>

CHANCERY.          ## W. & A. Singleton *vs* Singleton *et al.*

Case 80.                   APPEAL FROM THE WOODFORD CIRCUIT.

                        *Bills of review.   Wills.   Infants.   Parties.*

July 1848.         This opinion was delivered by the present Chief Justice, on the 21st of
                   October, 1843, but not placed in the hands of the Reporter for publi-
                   cation, until the present term.

                       IN June, 1841, after the decree of the Woodford Cir-
The case stated,   cuit Court, founded on a verdict against the validity of
(8 Dana, 315.)     the writing which had been admitted to probate in the
                   Woodford County Court, as the last will and testament
                   of Jeconias Singleton, deceased, had been affirmed by
                   this Court, (*Case of Singleton's will,* 8 *Dana,* 315,) Wil-
                   liam Singleton and Atwell Singleton, infant grandsons
                   of said Jeconias, and claiming to be his devisees, filed by
                   their next friend, William R. Keene, their bill in the said
                   Circuit Court, praying for a review and reversal of said
                   decree, on the ground that they had not been made
                   parties to the bill and proceeding in which said decree
                   was rendered; that being infants of tender years, the
                   one eleven and the other eight years of age, they had

no notice or knowledge of said proceeding—had no op- W. & A. Single-
portunity of defending and protecting their rights, and      ton
                                                             vs
are seriously injured by the decree. They make the      Singleton et al.
suit in Chancery for invalidating the will, and every part
of the proceeding appertaining to it, a part of their
bill—they show that by one of the clauses of said will,
a tract of seventy four acres of land, alledged to be
worth $5,000, is devised to their father, Elijah Singleton,
a son of the testator, for life, with remainder in fee, to
his eldest sons—that they are and were at the date of
the said writing, the two eldest sons of said Elijah, and
they alledge their interest to be worth $3,000. They      Object of the pre-
aver that said writing is the true and valid last will and  sent bill and a-
                                                            mended bill.
testament of said Jeconias Singleton, and alledge that
since said decree, the complainants in the former decree
are dividing the estate, and making all the parties to the
former proceeding, and also the administratrix, since
appointed, defendants to their bill; they pray that the
said decree may be reviewed, reversed and opened, and
that they be allowed to contest the matters set up in the
original bill therein; that the issue whether the said
writing is the true will of Jeconias Singleton, be tried by
a jury, so that they, by their next friend and his counsel,
may have an opportunity of maintaining its validity
and protecting their rights under it; and they pray for
all equitable relief.

In March, 1842, the complainants filed their bill of
revivor and amendment, reviving the suit against the
administrator *de bonis non*, of Jeconias Singleton, Jane
Singleton, the administratrix, having died, and alledging
in detail, the existance, in regard to said writing, of all
the circumstances necessary to make it a valid will of
lands and personalty, and referring to the proceedings
for setting it aside, of which they were wholly ignor-
ant; they say there was no decree against them, as they
were not parties; that Elijah Singleton, against whom,
with others, the decree was rendered, was but tenant
for life of the lands devised to them in remainder, and
that he was, as such, unable to sustain the suit by which
said will was pretended to be set aside for want of suffi-
cient interest; and that said decree was not only erro-

W. & A. SINGLE-
TON
vs
SINGLETON et al.

neous in as much as it was rendered against said Elijah Singleton only, and affected the inheritance, but also in this, that the issue formed to try the validity of the will, was contrary to law and not such as the statute author-ized, and that the rights of infant devisees were not pro-tected, and they were not parties to said suit. They say the said proceedings ought to be reviewed, and pray that said will may be established and the cause heard on the new and supplemental matter aforesaid, at the same time that it is re-heard on said original bill, that the pro-ceedings may be reviewed and the rights of the parties ascertained and determined; and if this be not the proper relief, they pray for such other relief as belongs to their case.

Demurrer to the bills and decision of the Court sus-taining the de-murrer.

To these bills a demurrer was filed by those of the defendants who had opposed the will, and also a plea relying on the former decree and its affirmance in this Court, as a bar to all relief in the premises. And the cause having, by agreement of all parties, been submit-ted to the Court for final decision on these pleadings, the demurrer and plea were sustained and the bill dismissed with costs. For the reversal of this decree the com-plainants have appealed to this Court, and the question is presented whether, upon the statement and prayer of the bill, and giving due effect to the affirmance by this Court, of the decree sought to be opened, they are en-titled to any relief, and if any, in what form and to what extent. The first enquiry is as to the sufficiency of the bill, and first, whether it shows any grievance to the complainants; and second, whether it lays the ground for any appropriate remedy within the power of the Court. If it does, then under the prayer, specific or general, the complainants should be entitled to the relief belonging to this case.

I. In discussing the bill at the bar, some debate oc-curred as to its true character and name, and it was ar-gued upon the definitions of "a bill of review," "a bill in the nature of a bill of review," and "a supplemental bill in the nature of a bill of review," and upon the cases to which the elementary writers on chancery practice state these bills to be respectively applicable, that this

bill, upon the case which it makes out, is not entitled to either of these denominations or characters. And it is insisted that as a decree cannot be opened, .reviewed or reversed by bill, unless it belong to one of these classes, the complainants, so far as they seek a reversal of the decree, must fail *in limine*.

But the names of these several bills are of no other importance than as they serve to designate the mode of applying, under different circumstances, for the review and reversal of a decree by bill. Every bill which seeks the review and reversal of a decree, is essentially a bill of review or a bill in the nature of a bill of review. Even a bill which seeks to set aside a decree for fraud, is said to be an original bill in the nature of a bill of review: (*Story on Eq. Plea. page* 340;) and so must every bill which seeks to reverse the decree on any other ground, be regarded as a bill of review or a bill in the nature of a bill of review, whether it shall be called a bill of review simply, or a bill in the nature of a bill of review, or an original or supplemental bill in the nature of a bill of review, depends upon its contents and objects, and the circumstances under which, and the parties by or against whom it is filed.

A bill of review strictly so called, is a bill filed after the enrollment of the decree, seeking its review and reversal on the ground either of error of law on its face, or of new matters subsequently discovered. If the decree be not enrolled, a bill seeking a review and reversal, though in the nature of a bill of review on account of its object, is not strictly a bill of review, because the decree is not enrolled. But as a decree not enrolled could be re-heard and changed on a petition merely, a bill for this purpose is not necessary, unless new matter or new parties are to be introduced, when the bill being in respect to the new matter or parties, supplemental, and in respect to its object, in the nature of a bill of review, it is called a supplemental bill in the nature of a bill of review; and as we have seen, a bill impeaching a·decree on the ground of fraud, is or may be called an original bill in the nature of a bill of review.

W. & A. Single-
TON
*vs*
Singleton *et al.*

The technical name of a bill which seeks the review of a former decree is not otherwise important than as it serves to designate the mode of applying, under different circumstances, for the review and reversal of a decree by bill. Every bill having that object, is essentially *a bill of review*, or *a bill in the nature of a bill of review*; even a bill to set aside a decree for fraud, is an original bill in the nature of a bill of review: (*Story's Eq. Plea.* 340.)

A bill of review strictly, is a bill filed after enrollment of a decree seeking its reversal for error of law or of fact on its face, or of new matter subsequently discovered, If the decree be not enrolled such a bill is a bill in the nature of a bill of review. Such a bill as the latter is not necessary unless new matter ; or new parties are introduced.

W. & A. Single-
ton
*vs*
Singleton *et al.*

Though the ancient rule may have been that parties and privies only could file bills of review, &c. it is now relaxed, and those who were not parties and who may be affected by decrees may file such bills, and they are properly termed supplemental bills in the nature of bills of review: (*Story's Eq. Plead.* 358, 424.)

Originally, perhaps the parties to the decree or record, or their privies in representation, may alone have been allowed to file a bill of review or a bill in the nature of a bill of review, or a supplemental bill of that nature; and it is sometimes laid down that these bills can only be filed by the parties. But if this was the case originally, the rule was relaxed in process of time, when it appeared that it was requisite for the preservation of the interests of persons who were not parties to the decree, but were bound or affected thereby, to have remedy by bill, for its review and reversal. Some of the cases in which the right to come in by bill for the review and reversal of a decree, has been allowed to persons who were not parties to the record nor their privies in representation, will be hereafter noticed. It is sufficient at present, to say that the bills by which they have been thus allowed to obtain relief, being in their nature and object, bills of review, and stating also new matter, at least so far as they bring in new parties and show their interest, may with propriety be called supplemental bills in the nature of bills of review: (*Story's Eq. Plead., page* 338 *Sec.* 424.) The main question, however, is whether the matter of this bill is sufficient to authorize and require a reversal of the decree, and whether the complainants are in a condition which entitle them to seek a reversal by bill. If these questions be answered in the affirmative, we should not doubt that if a name be necessary for the bill, an appropriate one may be found in the vocabulary of a Court of equity.

The facts stated in the bill and admitted by the demurrer.

II. The bill shows that a writing purporting to be the will of Jeconias Singleton, alledged by the complainants to be his true and valid will, by which if valid, an estate by way of vested remainder upon a life estate, and worth $3,000, is devised to them was, if the rule of chancery practice is to prevail in such proceedings, annulled and set aside by verdict and decree in a suit brought by some of his heirs, against all of his devisees except the present complainants—that they were in being at the death of the testator, and during the whole progress of the suit, with such interest as entitled and required them to be made

parties after having been admitted to probate in the County Court—that they were infants of tender years, having no knowledge or notice of the proceedings, not made parties thereto and allowed no opportunity of being heard in the defence of their interest, and the record of the suit shows that neither themselves nor their interests were in any manner represented therein, nor their rights asserted or defended, except so far as it may have been incidentally done by parties who, though not representing either their persons or their estate, had a similar interest in sustaining the will. If all this be true, as is in effect admitted by the demurrer, and if the present complainants are bound by the decree, though not parties—if until reversed, the verdict and decree against the will actually annuls and destroys it as a legal instrument, so that it cannot be proved or used to establish any interest which it professes to create, then is the decree most obviously and deeply prejudicial to the complainants, since it deprives them absolutely of a valuable interest, without an opportunity of defence; and if, according to the rules which should govern the proceeding, it was improper and erroneous to proceed to render a decree or sentence thus obligatory upon the complainants, when they were not actually or virtually before the Court, it would seem to follow as a necessary conclusion, not only that sufficient ground is shown for the reversal of the decree, but also that the complainants are entitled to seek its reversal by appropriate mode, unless their right of doing so has been lost or barred by reason of something besides the decree itself, and that if there be no other exclusive remedy, they must be entitled to seek its reversal by bill, which is an appropriate mode of reviewing and reversing the decree and proceedings of a Court of equity. For we take it to be an indisputable principle, essentially inherent in every enlightened system of jurisprudence, that every person who is bound by a proceeding to which he is no party and had no opportunity of becoming a party or of making a defence, and in which he is unrepresented, must, if he had such interest in the subject as required or authorized him to be made a party, be entitled to some

W. & A. SINGLE-
TON
*vs*
SINGLETON *et al.*

8bm345
111 666

Every person who is bound by a proceeding to which he was no party, and had no opportunity of defence, and has not been represented, and who is interested in the subject matter in litigation, has some mode

W. & A. Single-
       TON
        vs
Singleton et al.
of reviewing the
decree or judg-
ment: (1 Scho.
& Laf. 386; 2
Brown's Parl.
Ca. 315, 22:
Ibid, 447; 9
Rich. 2d, 1385;
1 Stat. Law Ky.
127.)

mode of reversing the sentence. In the case of *Gifford* vs *Hart*, (1*Scho. & Laf. page* 386,) this principle was even more broadly announced. The Chancellor, (Lord Redesdale,) there declared that if, as he supposed, the complainant, a succeeding tenant in tail, who was proceeding by original bill after the bill of the preceeding tenant in tail, praying for the same relief, had been dismissed, was barred by the decree of dismissal, he was entitled to an appeal, (page 409,) and the English House of Lords, (page 411,) in conformity with the principle thus declared, and upon the recommendation of the Lords Chancellors of England and Ireland, determined that if the complainant were tenant in tail, as alledged, he might appeal from the decree of dismissal against the former tenant, "making himself a party to the suit by supplemental bill, to have the benefit of the proceeding therein, for the purpose of appealing from said decree."

We may also refer for the same principle, to the cases of *Osburn* vs *Usher*, (2 *Brown's Parl. Cases*, 315, 22;) *Wingfield* vs *Whaley*, (*Same*, 447;) and *Lloyd* vs *Johnes*, (9 *Vesey*, 51–55;) and the statutes (9 *Richard the* 2d, 1385;) (1 *Stat. Law of Kentucky*, 127,) is based upon or establishes a similar principle. Are the complainants then bound by the decree? Or in other words, are the verdict and decree constituting a sentence that the paper in question is not the will of Jeconias Singleton, conclusive in all collateral controversies, and until reversed, that it is not his will? In answer to this question, it is to be observed in the first place, that the sentence does not profess to act upon the interest of parties claiming under and against the will, and decide that A. and B. and C. shall not claim under the paper as a will, or that as to them it is not a valid will. If the object of the proceeding had been to ascertain and enforce the rights of the parties in the property attempted to be devised, and the question whether this was the will of Singleton or not, had been merely incidental to the main object of the suit, as the Court would have had no power over persons not before it, nor over interests not sufficiently represented by the parties before it, any decree which could have been rendered, would only have been bind-

ing on the parties and interests that were before the Court, because the power of the Court in the case, would have been limited to them. And we may remark that in such a case the decision of the question of will or no will, or of *devisavit vel non*, thus incidentally made, might not, perhaps, be conclusive in a controversy about different property, even between those who were parties to the suit; and that as to those who were not parties nor represented by parties, if the decree had attempted to dispose of their interests, though it would have been thus far, ineffectual and void, and might have been so treated in any collateral proceeding, it would, nevertheless, be subject to reversal by them, because upon its face it professed to dispose of their interest, and therefore, to bind them. But the sentence now before us is not one of that character. It does not purport to decide any question of *meum & tuum* in respect to property, nor to act upon the parties personally, nor to dispose of their individual interests. It acts upon the paper itself, which is asserted on the one side and denied on the other, to be a will. It decides the question of its character and validity in the most general and abstract form, not incidentally to any other object, but as being itself the direct and only object of the proceedings. It pronounces that paper not to be the will of Jeconias Singleton, and in the most direct and absolute terms, annuls and sets it aside, not partially nor so far as A. or B. may be concerned, but wholly and absolutely. It imports a final and authoritative determination of the question whether this is the will of Singleton or not, and a definitive negation and annulment of its effect and character as a will. If the tribunal pronouncing such a sentence had power, as the case stood before it, to try and determine the question in this general form and to pronounce the comprehensive sentence appropriate to such a determination, such power over the question and the subject to which it relates, is of course, not transcended by such a sentence, and must, therefore, be deemed sufficient to give effect to it according to its import, and to render it until reversed or set aside by direct proceeding, conclusive upon all persons, if it be

W. & A. SINGLE-
TON
vs
SINGLETON et al.

A proceeding un-
der the statute
of Ky. of 1797,
for the probate of
wills in the
County Courts,
where the will is
admitted to re-
cord or rejected,
is binding upon
all persons until
reversed by a le-
gal proceeding
for that object.

conclusive upon any, as to the question decided, and as to all consequential questions and interests dependent on it.

This question of power and of the effect of the sentence depends not upon the general doctrines or principles, or jurisdiction of a Court of equity, but upon the 10th and 11th sections of the act of 1797, concerning wills, and especially upon the construction of the 11th section, and upon the nature of the proceeding and of the question therein prescribed. The 10th section gives to the several County Courts power to hear and determine all causes testamentary, arising within their respective jurisdictions, and to examine and take proof of wills and proceeds to define the circumstances which shall determine their respective jurisdictions, referring only to the residence and *situs* of the property of the decedent as criteria for determining the jurisdiction. The 11th section commences by authorizing the Court having jurisdiction as aforesaid, to proceed immediately to receive proof and grant certificate of probate of any will offered for proof therein, but provides that, "if any person interested shall, within seven years thereafter, appear and by his bill in chancery, contest the validity of the will, an issue shall be made up whether the writing produced be the will of the testator or not, which shall be tried by a jury, whose verdict shall be final between the parties, saving to the Court the power of granting a new trial for good cause as in other trials, but no such party appearing within that time, the probate shall be forever binding, saving to infants, &c. the like period after the removal of their respective disabilities." And under our system of Courts this bill is to be filed, not in the Court of probate but in the Circuit Court.

If the probate be
questioned by
bill in equity as
provided for by
the statute, the
decision is bind-
ing upon all per-
sons until rever-
sed by error, ap-
peal or bill of
review, &c., and
all parties inter-
ested should be
brought before
the Court.

It should be stated that the will which was brought in question by the proceeding now before us, though consisting of numerous causes, was a single instrument, executed by one single act, without codicil or addition, or interpolation admitted to have been, in point of form, duly executed, published and authenticated, and contested on the ground of insanity, general or partial, and fraud or undue influence. The entire instrument was impeached upon grounds going to the validity of the whole and every part of it. The question submitted to the jury

was equally comprehensive. Their verdict, as already stated, found, as to the entire instrument, that it was not the will of the supposed testator, and a corresponding decree of nullity as to the entire instrument, was pronounced by the Court. The immediate question is, whether this sentence transcended the power of the tribunal which pronounced it; and we say this question is to be determined by reference to the statute and not to the general powers of a Court of equity, because the proceeding itself is of statutory creation, and whatever power the Court or jury has over the subject, it has, in virtue of the statute and not in virtue of the general equitable jurisdiction of a Court of equity. Indeed, it is to be remarked that even under the statute, the Court, that is the Chancellor, has no direct power over the subject itself of the proceeding, but it is to the jury that the power of deciding the question of will or no will, and of thus determining the character of the contested writing is committed. As the proceeding is to be had by bill in chancery, it results as matter of necessary inference, that the Chancellor has the power of superintending it, and that it is his right and duty so to mould it according to the rules of his Court, as to meet the ends of justice and the objects of the statute, one of which undoubtedly was, that all parties in interest should be brought before the Court, so that there might not only be a final end of the question, but that this end might be attained in conformity with the principles of justice and the rules of chancery practice which require that all parties who are to be affected by a proceeding in that Court, should have the appointed notice of the proceeding and the appointed opportunity of asserting and protecting their rights. He has farther, the resulting power of superintending the formation and trial of the issue which is to be made up and tried in his Court— of deciding incidental questions of law—of granting a new trial for good cause, as in other trials, and as matter of inference, the power also of pronouncing a final decree in conformity with the verdict, and thus closing the proceeding according to the forms of chancery practice. But the jury is not summoned nor the issue made

W. & A. SINGLE-
TON
vs
SINGLETON et at.

up and tried for the purpose of informing the conscience of the Chancellor and enabling him to decide the question, but for the very purpose of deciding the question and terminating the controversy by their verdict. And the decree, if any thing more be necessary than a mere approval of the verdict, is as much the mere legal and formal consequence of the finding of the jury as a judgment at law is of the verdict in a trial at law.

The jury are the triers of the fact of will or no will, tho' the issue be made and legal questions arising be made and decided by the Chancellor presiding. If the parties are not all before the Court is this error only or is the decree void as to such persons? or as to all interested? The question is will or no will, and decided either way binds all or none of the persons interested in the will.

Now, it is readily conceded, upon the principles thus deduced from the statute, that the Chancellor not only might, but should refuse to submit to the jury an issue affecting the entire validity or invalidity of the whole will, until all the persons interested in that question should be brought properly before the Court, that if through inadvertance in this respect, he should submit the question prematurely, this, if the verdict were against the interest of the party omitted, might be a sufficient ground for setting it aside, in order that the error in the proceeding might be corrected; and that this Court, under its revisory power, which must be regarded as coextensive with the original power of the Chancellor in the case, might (as was done in the case of *Rogers* vs *Thomas*, (1 *B. Monroe*,) reverse for such an error in the proceeding. But the question is, whether the mere defect of not having all the proper parties before the Court, is any thing more than ground of reversal? Does it render the verdict void or voidable only? Does it invalidate the power of the jury to try and decide the question as to the entire validity of the will, or restrict the effect of their verdict upon that question, to any extent, and if to any extent, how far? The statute requires a bill to be filed in chancery, contesting the validity of the will, and an issue to be made up whether it is the will of the testator or not. It requires then, that there should be a party or parties contesting, and a party or parties affirming the validity of the will, a party or parties offering to prove it and a party or parties contesting the proof. For this is absolutely necessary in contemplation of law, to make up an issue. Does the statute require any thing further as absolutely indispensable to authorize the jury to try the issue and

determine the question whether the writing is or is not the will of the party? And if the statute gives authority to the jury to try the issue involving the validity or invalidity of the entire will, though all the persons interested be not directly parties to that issue, does it not necessarily follow, that it gives to them a power of decision, and to their verdict an effect coextensive with the question itself, which is submitted to them? Or if, because the proceeding being by bill in chancery, it is inferred that all persons who have an interest, should be parties, before the issue is tried which is to affect all persons interested; and if on the ground of this inference it must be said that because all the parties were not before the Court, the jury had no power to decide upon the validity or invalidity of the whole will, then, as the statute, though it has been decided, (in the cases of Singleton's will and of Rogers vs Thomas, supra,) not to prescribe the exact form of the issue, certainly does prescribe its substance, so as necessarily to involve the question whether the contested paper is the will of the testator or not; it would be difficult to find in it any thing which would restrict either the question or its decision, to a part of the will, in a case where the contest between the parties before the Court, extends to the whole will; where it is contested on grounds going to its entire destruction, and maintained by parties interested in and affirming its validity to the same extent, when in effect, from the nature of the points in contest, the whole will must stand or fall by the authoritative decision of all or any of those points in one or the other way. And as there is nothing in the statute which would, in such a case, sanction such a modification of the question to be tried as would restrict it to the interest of the parties before the Court, so there is nothing which can restrict the power of the jury and the effect of their verdict, to those parties only. The statute authorizes no other issue to be submitted but such as will, expressly or impliedly, present the comprehensive question whether the contested paper be the will of the party or not. This is the statutory question, and whenever, by the statute, the jury can try and decide it, their deci-

sion has the authority of the statute to give it effect to the extent of the question decided. It might, therefore, with at least as much reason, be maintained that the want of parties, there being enough on each side to make up an issue, would prevent the power from attaching to the jury of deciding the question with conclusive effect even as to those who were parties, as it can be maintained that the verdict in such case would not be conclusive upon the question, even as to those who were not parties. But although when the paper which has been admitted to probate consists of parts, of which some may be valid while others are invalid, (as in case of a will, perfect in itself, but having one or more codicils or other additions intended also to operate as testamentary dispositions,) a part only may be contested, and consequently, the issue and statutory question may be limited to that part, or if the whole be contested and the question for the jury should extend to the whole, as in such case it ought to do, the verdict might discriminate and find that one of these parts is and another is not the will of the testator; we do not admit that even in these cases, and certainly not in the present case, either the statutory question is susceptible of division or restriction in reference merely to the parties who may or may not be before the Court, or that it is competent for the jury to make any discrimination upon that basis. The Court in controlling the preparation and progress of the suit, should look to the parties and their interest, because they are to be affected consequentially by the verdict, but neither the question to be submitted for decision nor the jury who are to decide it, should have any direct reference to them. The verdict in this case, as already seen, makes no such reference and discrimination, but finds against the whole and every part of the will, and this verdict being confirmed by the decree, the sentence of nullity is, as we think, binding upon all or on none of the parties interested.

The statute, it is admitted, looks to the necessity of having parties to the proceeding which it authorizes, and intends to give all persons interested an opportunity of being heard in that proceeding. If this intention

were not, as we think it is deducible from its provisions, referring the proceeding to a Court of chancery, we should regard it as sufficiently established by the practical construction which it has received. But the statute also intends, and as we think more clearly, that the sentence to be pronounced in this proceeding, should, until reversed, be binding on all parties in interest; and we are of opinion that it intends all parties to have an opportunity of being heard, not as being necessary to confer upon the appointed tribunal the power of pronouncing a sentence conclusive upon all, but because intending to confer that power, it intended also to reconcile its exercise with the principles of common justice, by giving to every one interested the opportunity of asserting and protecting his interest.

If any one principle is more certainly deducible than any other, from the erection of a peculiar jurisdiction and mode of proceeding for taking and contesting the proof of wills such as this statute establishes, it is, as we think, the principle that the question of will or no will, as applicable to the same instrument, shall not be subject to contradictory decisions prevailing at the same time. The immediate and *ex parte* proof of a will in the County Court, which is purely a proceeding *in rem*, is allowed mainly no doubt, with a view to the necessity of an immediate decision of the question of administration on which the preservation and proper management of the personal estate will in general depend. But it is to prevent the diversity of decisions that might arise if the question of will or no will were subject to be tried *de novo*, whenever it should come up incidentally, that the sentence of the County Court admitting the will to probate, though based on *ex parte* proof, is declared to be binding, unless the will shall be contested by the proceeding prescribed by the statute. Without any such statutory declaration, the rejection of the will by the County Court has been held equally conclusive of the question, not only in other Courts where it comes up incidentally, but even in that Court upon a second attempt, though by different persons to prove the will: *Wells's will*, (5 *Littell's Rep.*, 273,) and *Jacob* vs *Pulliam*,

W. & A. SINGLE-
TON
*vs*
SINGLETON *et al.*

It was not the intention of the Legislature in giving the bill in chancery, to have different trials of the validity of the same will before the Chancellor, and contradictory decisions in force in regard there-to; but that all the persons in interest should be parties to the issue on that point and bound by the decision of the jury.

(3 *J. J. Marshall*, 200.) The same effect was, of course, to be given to the sentence of this Court, acting as it formerly did, as a revisory tribunal, by way of appeal or writ of error from the County Court in a question of probate. For this Court had then the same power as the County Court had, of rejecting the will or admitting it to probate, and the proceeding by appeal or writ of error did establish or reject the will. In the case of *Well's will*, as reported in 4 *Monroe*, 152, when it came before this Court the second time upon the writ of error of two of the devisees, who in consequence of their infancy, were not barred, by lapse of time, from prosecuting the writ for the reversal of the first sentence of rejection, the will was allowed to be fully proved in this Court, and was here admitted to probate, which of course established in favor of all the devisees and as against all the world, all of its lawful devises; although some of the devisees who were made defendants in the writ of error were barred from prosecuting it as plaintiffs. Surely that was a case in which, if in the course of the probate itself, the law would have admitted of a partial probate or rejection with reference merely to the attitude of parties, when the question of will or no will, was substantially entire and depended upon the same facts as to all; the benefit of the probate might have been allowed to the infants who were not barred, to the exclusion of the adults who were barred from proving the will. But neither the question nor the sentence would admit of this division, and the Court deciding that the right of appeal was several, allowed full probate of the will rather than deprive the infants of the benefit of their remedy, because the adults had lost theirs. But the question whether this is the will of Jeconias Singleton or not, which was presented by the issue in the proceeding now under review, and which was decided by the jury, is the same question of will or no will, which was decided by the County Court when the will was there admitted to probate. It is the same question which is presented in every case of probate, whether in the County Court or on an appeal or writ of error from that Court. It was presented too,

as a question of probate, in a proceeding instituted for the purpose of requiring full and final proof against opposing parties and proof, of a will which may have been before proved *ex parte*, and it was made before a tribunal which was intended to have jurisdiction under the statute, to pronounce finally for or against the will. Can it be supposed then that any authorized decision of this question by a tribunal thus selected and in a proceeding thus provided for the final establishment or rejection of the will, was intended to have a less extensive or conclusive effect than the *ex parte* sentence of the County Court? Or can it be imagined that the Legislature, in completing and filling out a peculiar system for the proof and contestation of wills, and for the final determination of the question of their validity or invalidity, in a manner more formal and just than that which may have prevailed in the first instance, intended to provide or even to allow a mode of proceeding by which this question might be determined partially or by piecemeals, or merely with reference to the interest of particular persons, and thus to leave a question which is essentually the same in all the cases, and dependent on the same matters of fact and law, subject to different trials independent of each other, and to contradictory decisions, all to be valid at the same time? Was it intended that some of the heirs, after probate in the County Court, might file a bill against some of the devisees, and at the same time or upon a verdict being rendered for or against them, that they might file a second bill against other devisees, and that other heirs might file a third bill against some or all of the devisees, and so on until the end of the seven years or until the end of twenty seven years reserved to infant heirs? Or was it intended that if the heirs should file their bill against some of the devisees and succeed in overturning the will by a verdict against it, the probate in the County Court should, notwithstanding this sentence of nullity, stand good as to the omitted devisees? Or that they should be allowed to prove the will by original evidence in support of their claim to property bequeathed or devised to them? And shall the administration amid the

W. & A. Single-
TON
vs
Singleton et al.

confusion produced by these contrary determinations of the single and commonly indivisible question of will or no will, be also divided according to the various decisions to which it may be subject, between the executor and an administrator? It seems to us that any and all of these results would be at war with the spirit and object of the statute which intends that there shall, at some time or other, and by means of the system which it provides for the probate and contestation of wills, be a consistent and conclusive decision of the question. And as some of these discordant results must, and all of them may, ensue from the adoption of the principle that the verdict of the jury for or against the will, is good between the persons who may be parties to the proceeding, but inoperative as to the interests of those who are not parties, we feel bound to reject this principle as inadmissible upon a fair construction of the statute.

To accomplish the objects of the statute the verdict, whenever rendered, must be binding upon all the parties interested or upon none. And as the statute, without expressly prescribing it as an indispensible pre-requisite to the efficacy of the verdict, that all parties in interest shall be before the Court, declares that it "shall be final between the parties," and as a verdict has never been deemed void because all parties in interest were not before the Court, we think the verdict is entitled to universal effect until it is wholly set aside. We, therefore, adopt the conclusion as being altogether most consistent with the object and provisions and harmonious operation of the statute, that there can be but one proceeding by original bill filed for contesting the validity of a will admitted to probate, upon which, at some stage or other, before or after its apparent termination, all other proceedings for asserting the rights and interests of all persons interested in the question must be engrafted—that although it is the duty of the complainant, (and of the Court when appealed to,) to have all persons in interest made parties before the trial, and though an error in this respect may be ground of reversal, (as decided in *Rogers* vs *Thomas*, 1 *B. Monroe*, 390,) the verdict, so long as it stands, is nevertheless valid and binding upon

The verdict of the jury upon a bill filed, contesting a will, must be binding on all interested in the will, or it is not binding upon any. If all are not parties, they may come in by bill in the nature of a bill of review to review and reverse.

all, if there be in fact parties opposed in interest to make up the issue—that although the proceeding itself, preparatory to the trial, is intended to be in accordance with the practice of a Court of chancery, the verdict, when confirmed by decree, is essentially a sentence *in rem*, good against all persons until set aside, and that, therefore, all persons having an interest affected by it, and who ought to have been but are not parties, must be entitled to those remedies for reversal of the decree approving the verdict and for a re-trial of the question, which are appropriate to the nature of the proceeding as being in chancery.

By this construction the inconsistency will be avoided, of there being at the same time, and by the determination of the same Court, or of two Courts, standing as regards this subject, in the relation, to some extent, of original and appellate tribunals, a will and no will of the same person—the unity and harmony of the proceeding, and of the entire system of probate of wills, will be preserved—the right which the statute intended to give to all parties interested in the question to be decided, will be secured. And although some inconvenience and delay must ensue from holding a decision once made, and especially after affirmance, to be subject to reversal by direct proceeding on the part of those who may not have been parties; and though in allowing the whole question to be opened by them when it could not have been opened by those who were parties, there may be some apparent injustice to those who had proved successful in the previous trial, yet the delay does not seem to be greater than is authorized by the statute; and it may always be avoided if all persons interested are made parties, as might easily have been done in this case, and as may, under our practice, be easily done in all cases. We are satisfied that the construction which we have adopted, will not only prevent much of the confusion and inconvenience which must arise if the verdict and decree thereon be not, while unreversed, conclusive of the whole question; but that it will tend in practice to expedite a final decision, to which all persons interested shall in fact be

W. & A. SINGLE-
TON
vs
SINGLETON et al.
parties.    And as to the apparent injustice or hardship of
the case, there is certainly more in denying to these in-
fant complainants all remedy for the reversal of a de-
cree, which although they were not parties to the re-
cord, nor at all cognizant of the proceeding, binds them
and their interest as long as it stands unreversed, than
there is in allowing them their remedy, though the con-
sequence be to deprive the successful parties of the en-
tire advantage they have obtained by a verdict in their
favor.    The case of *Wells' will*, (4 *Monroe*, 152,) fully
sustains this conclusion.    That such must be the conse-
quence of a reversal, follows from the nature of the sen-
tence, and of the question decided, and from the inten-
tion of the statute in regard to probate of wills, which no
more admit of a partial reversal of a sentence of probate
with reference merely to the interest of the parties who
may or may not have been before the Court, than they
admitted of a partial sentence in the first instance in re-
ference to the same distinction.    Indeed the reversal of
every joint decree necessarily throws the cause back as
to all the parties, to a point at which the error may be
corrected.    And it is to be again remarked, that what-
ever hardship there may be, is generally attributable to
those who are to feel it, since they should have made
the proper parties to their bill.    We are sensible of
the importance, both in regard to the present case, and
the general practice, of the construction which we have
given to the statute with respect to the form of the
proceeding which it authorizes, and the efficacy of the
verdict upon all persons interested.    And we have not
adopted it without considering carefully, not only the
statute itself, and the various constructions of which it
is susceptible, with their consequences, but also every
case which we could find in this and other Courts,
which seemed to have any bearing on the question.

The analogy of
this opinion to
the English prac-
tice, of a second
proof in *solemn*
*form*, after proof
in *common form*.
We do not know that the proceeding now under con-
sideration prevails any where except in Kentucky, and in
some form in Virginia, from whose statute of 1785, ours
was substantially taken.    In England there is a proceed-
ing some what analogous to it, by which after proof of
the will by the executor in the common form and *ex parte*,

he may be called on by the next of kin to prove it in the same Court in solemn form, with the effect of revoking or annulling the probate if he fails. And although he should attempt in the first instance to prove the will in solemn form, as he may do by citing all of the next of kin, yet if he shall have omitted any, although as to the personalty the probate until revoked is conclusive, as it is also when made in common form, upon all parties in all collateral controversies, yet the party not cited may call on the executor again to prove the will, unless, though not a formal party to the probate nor cited, he was so far cognizant of and privy to or participant in the proceeding as to make himself virtually a party: (*Williams on Executors*, 194;) and *Newell, &c.* vs *Weeks*, (1 *English Ecc. Rep.* 239.)  From the cases referred to it is apparent that but for their participation in opposing, with the parties actually cited, the first probate *per testes*, the persons who were attempting to call upon the executor to bring in the probate and again to prove the will, would, though they had not been actually cited, and though the first probate had been affirmed on appeal to the Court of Delegates, have succeeded in their attempt, and upon failure of proof by the executor, the probate must have been revoked.  This inference is not opposed by the cases of *Richardson* vs *Clancey & Hoffman*, and *Norris* vs *White*, decided by Sir William Winn, and reported in notes to the case of *Newell, &c.* vs *Weeks*.  These cases, however, as well as that of *Tyrrell* vs *Jenner*, (4 *Eng. Ecc. Rep.* 27,) show that in the proceeding to prove the will in solemn form upon citation by the executor, the Ecclesiastical Court in England, exercises a discretion with regard to parties, founded in part perhaps upon the consideration that the omitted party may still have remedy for revoking the probate, as is intimated in the last case referred to; and more especially, perhaps, as is also intimated in the same case, because that Court does not conceive itself bound by the rules of chancery practice in relation to parties; which rules, however, our statute has at least to the extent which we have indicated, impressed on the proceeding which it establishes; and in the case of

*Redmill* vs *Redmill*, (1 *Eng. Ecc. Rep.* 427,) the Judge, though doubting as to the validity of a codicil, would not proceed with the case for want of proper parties, there being none before him interested in maintaining it, and he required that all parties in interest should be called before the Court either by notice or by formal process.

We shall not stop to make a direct application of these cases to the one now before us. They tend at least, to support our conclusion in regard to the entirety of the question of probate, and they show that in England that entirety remains unbroken amid the diversity of remedies; and that though there may be successive decisions opposed to each other, there can be but one prevailing at any one time. We leave these cases with the remark, that here the Court of probate has jurisdiction to receive proof of wills, not only of personalty but of lands which the executor cannot represent in a Court of equity; and that the statutory proceeding for requiring a second and final proof of the will, differs from that in England, by being thrown into the Court of chancery, and thus, to some extent, subjected to its rules.

We have found no cases, either in Virginia or Kentucky, in which the statute seems to have been considered and expounded with a view to giving a full and consistent operation to the entire proceeding which it establishes, or of ascertaining the precise extent to which the verdict which it authorizes is obligatory, or the ground on which its force depends. The case of *Chasteen* vs *Ford*, (5 *Littell's Rep.* 268,) does indeed decide that Ford, a slave emancipated by a will which, after having been admitted to probate in the County Court, was declared invalid by a decree in chancery, could not, though he was no party to that proceeding, set up the will afterwards, in an action brought to establish his freedom; and as a decision upon these facts, it precisely corresponds with the effect which we have given to the statute and to the proceeding under it, if the proceeding in which the will was declared invalid, was a proceeding under the statute. But the reason

The case of *Chasteen* vs *Ford* (5 *Litt.* 268,) cited, examined, and compared with *Pate's ad'r.* vs *Joe,* (3 *J. J. Morsh.* 116-17;) *Bod. will case,* (4 *Dana,* 476,) and the first supposed to be inconclusive on the point in this case.

given by the Court for its decision in that case, is that as the will emancipated Ford at a future time, which had not arrived when the will was annulled, he could not have been a party, but was represented in the proceeding as a part of the personal estate, by the executor, and was, therefore, bound by it.  We have been referred to this case as being directly opposed to the effect which we have given to the verdict and decree now in question, inasmuch as the Court in their opinion, place the efficacy of the decree as against Ford, on the ground of parties merely.  But it is to be remarked that while this case, if under this statute, shows that parties were not to be disregarded, the principle on which the reasoning of the Court was placed, viz; that Ford could not have been made a party, because the time when he was to be free had not arrived, may be regarded as overruled by the cases of *Pate's adm'r.* vs *Joe,* (3 *J. J. Marshall,* 116-17,) and the case of *Bodine's will,* (4 *Dana,* 476,) and probably the decision could not now be maintained on that principle.   Nor is it entirely certain that the decree then in question had been rendered in a proceeding under the 11th section of this statute, or that it was founded on a verdict.   And from the reference made to the ground on which the will was assailed, it would seem to have been one which could not affect the question of will or no will, but related only to the operation of the will as to the rights of parties under it, in consequence of a state of case occurring after the date of the will, and which is provided for by the last clause of the third section of the act of 1797, (2 *Stat. Law,* 1540,) but which could not affect the probate of the will.   The decree, therefore, may have rested for its effect, on nothing but the power of the Court over the parties.   Besides, there is no reference in the opinion to the verdict or to the statute.   But the proceeding seems to have been regarded as a mere ordinary proceeding in chancery; and a ground deemed sufficient for sustaining the conclusiveness of the decree regarded in that aspect, having at once presented itself, we cannot say that the Court, in resting its decision on that ground, either actually entered into a consideration of the stat-

W. & A. SINGLE-
TON
*vs*
SINGLETON *et al.*

W. & A. SINGLE-
TON
vs
SINGLETON et al.
ute, or should be understood as intending to give con-
struction to it.   We cannot, therefore, say with any
certainty, that if Ford had been a free man and not
made a party to the suit, the same Court might not have
regarded him still as being concluded by the decree in
all collateral controversies, with the right only of seek-
ing its reversal.   We consider the case of *Chasteen* vs
*Ford*, therefore, as too equivocal and uncertain in its
bearing upon the question now before us, to be regard-
ed as a judicial exposition of the statute; nor can we
allow decisive effect to what was said in the case of
*Rogers* vs *Thomas*, (1 *B. Monroe*, 398,) when the Court
in speaking of two emancipated slaves who had not
been made parties, said "they were necessary parties,
whose rights cannot be concluded by the verdict and
decree between other parties."   In this case as in the
other, we have no doubt the point actually in judgment
was properly decided.   These persons were necessary
parties whether the decree would or would not have
been binding upon them unless made parties.   The de-
cision assumes that they would not have been conclu-
ded, but whether not concluded in any collateral pro-
ceeding or not concluded in a direct proceeding for re-
versal, is not explicitly stated, and may not have been
directly considered.   And we say in relation to that
case, that although several questions upon the statute
were before the Court, the precise question how far it
makes the verdict and decree binding and on what their
force depends, was not presented for direct adjudica-
tion, and cannot be regarded as being decided by the
brief reference to the subject in giving a reason for the
decision actually made.   We do not consider either of
the two cases as being overruled by the present, because
if the same cases were now before us, (supposing the
first to have referred to a proceeding under the statute,)
we should, in accordance with the principles of this
opinion, be bound to decide them as they were decided—
the first on the ground that the decree against the will
was conclusive in all collateral controversies involving
that question, and the second on the ground that be-
cause the decree is to be thus conclusive, (though not

for the purpose of making it so,) the two emancipated slaves were necessary parties. But even if this was not so, the present case brings directly in question not only the effect of the verdict and decree and the authority on which they rest, but the nature and entire course of the proceeding under a bill in chancery, to contest the validity of a will, including a bill of review after an affirmance of the decree; and we have not felt at liberty to relieve ourselves from a thorough consideration of these subjects by resting on what may seem to have been decided in the two cases referred to, when it does not appear either to have been necessary or to have been attempted in either of those cases to consider thoroughly the precise question now presented. We must, therefore, rest satisfied with the conclusion to which our own investigation of the subject has conducted us, though it may seem to be to some extent, inconsistent with opinions, we cannot say decisions, for which we entertain the most sincere respect.

III. With regard to the question as to what should be the consequence of the error in the proceedings, in not having made the present complainants parties thereto, we cannot forbear to refer again to the case of *Rogers* vs *Thomas*, in which for the single error of the complainants in that case, not having made two emancipated slaves parties, with the corroborating consideration that there probably was an error in the trial in giving to the counsel of the complainants the opening and concluding argument, (which, however, was not assigned for error in this Court, and did not expressly appear upon the record,) the decree was reversed on the writ of error of the defendants, who were parties, with the effect of opening the case for a new trial as to the whole question. And yet so far as the actual defendants were concerned, this defect of parties was a mere technical error, not affecting the merits of the case. How different with regard to the omitted parties themselves, since they are bound by the decree. Surely no corroborating circumstance of error can be necessary to entitle them to a reversal when they complain that a decree has been rendered against them without making them

parties or giving them any opportunity of being heard, and without their having even a knowledge of the proceeding. If, however, it were a matter of discretion and corroborating circumstances were necessary, we find in this case, but with greater certainty, precisely the same circumstance with regard to the opening and concluding argument; and we find a state of the evidence so doubtful, as that this circumstance may have influenced the verdict; and so doubtful, that the decree, so far as it depended upon 'the evidence, was affirmed in this Court, not because its Judges were satisfied that the facts alledged against the will were proved, but because they could not say, in opposition to the verdict and the Chancellor's refusal to grant a new trial, that the jury were not authorized to find them true.

But no additional error or corroborating circumstance can be necessary in a case like the present. The fact itself is a sufficient error obviously prejudicial. Even in cases where the Court has undoubted jurisdiction over the persons decreed against, as in suits in chancery against infants and others, where all have been served with process, this Court does not hesitate to reverse a joint decree against the infants and others for the mere error of practice in failing to have the infants properly defended by guardian *ad litem*, and this is constantly done without reference to the merits of the case, though the father or brother, or other persons having the same interest with the infants, may be parties with them, strenuously supporting their side of the controversy, and without enquiring whether there is any reason to suppose that a correction of the error in the proceeding will produce a different result. Certainly then the error of taking or of rendering a decree binding on the interests of the present complainants, and which in its terms as well as its effect, is as much a decree against them as against any body, when they were not parties nor notified of the proceeding, nor defended therein, is a sufficient ground of reversal at their suit.

IV. Have they then their remedy for reversal by bill in the nature of a review. The very fact that they were not parties to the record seems to present some difficul-

ty in the way of any other remedy. But they are not only not parties to the record, but so far as we can discover, not even named in it; the devise to them being not by name but by description, as the testator's two grand sons, Elijah's two eldest sons. There might have been some difficulty then in their prosecuting a writ of error, since some allegation of fact *dehors* the record, would seem to be necessary to connect them with it, and they do not stand in any representative relation to those who were parties to the record: See *Stevens' heirs* vs *Stevens' widow*, (2 *Dana*, 428;) and as they are no where referred to in the pleadings, and it does not appear certainly in any part of the original record, that there were such persons in being at the death of the testator as the two eldest sons of Elijah Singleton, it might be doubtful upon the authority of the case of *McKinley* vs *Combs*, (1 *Monroe*, 105,) whether upon the original record and without additional allegations, the omission to make them parties could properly have been assigned for error, even on the writ prosecuted by the other devisees. A bill supplemental in its nature, was certainly an appropriate if not a necessary mode of supplying these facts; and as these facts when thus added to the record would show an error in the decree sufficient for its reversal, there would seem to be at once, a proper case made out for a bill of review, or rather for a supplemental bill in the nature of a bill of review, since it would, in effect, bring new facts and new parties into the cause, showing ground for reversing the decree, and for having the benefit of the former proceedings, and for a re-trial of the question which was decided by the decree. There would seem to be no necessity or propriety, after filing a bill of this character for the purpose of making the error manifest, to abandon it for the purpose of prosecuting another remedy for making the error effectual for reversal; and especially when the bill of review is itself an established remedy for reversal of decrees. The case formerly referred to in which a succeeding tenant in tail filed a supplemental bill for the purpose of making himself a party in order that he might appeal, was one in which he was

W. & A. SINGLETON
*vs*
SINGLETON *et al.*

bill of review, is an appropriate remedy, for persons interested in the trial of an issue in chancery on bill filed, who were not made parties to the original suit, especially after they have been referred to in the will by character not by name, and they may, on the filing of such bill with the leave of the Court, have a review, rehearing and reversal of the decision, though it may be that of the appellate Court.

not a necessary party in the original suit, but by events occurring after decree, became entitled to be a party and to have the benefit of the former proceedings. The statement of his interest, therefore, showed no error in the decree, and his bill was merely supplemental.

But among the cases in which a person who is affect-ed by a decree to which he was no party, is allowed to file a supplemental bill in the nature of a bill of review, is that of the remainder-man in fee simple when a de-cree affecting the inheritance has been obtained against a tenant for life: (*Story's Equity*, 338, sec. 424.) And although we do not regard that case, which seems to have been taken as the model of the amended bill in this case, as in all respects analogous to the present, or as standing on the same footing. Yet that case, and oth-ers which are classed with it, show that such a bill of review may be filed by a person affected by a decree to which he was not a party. And the case itself is suffi-ciently analogous to the present to authorize the adop-tion of the same remedy, since there was in this case as in that, no party actually representing the interest of these complainants. Remedy by bill of review seems also to have been allowed to one who was not a party to the original suit in *Chaworth* vs *Beech*, (4 *Vesey*, 564.) And all these cases show that such a bill may be brought by one who was not a party.

V. Are the complainants then, precluded from having their bill of review, by the affirmance of the decree in this Court? We suppose they are not. 1st. Because they were not parties either in this Court or in the Cir-cuit Court. 2d. Because this Court can only decide on the errors assigned, and the error of not making them parties was not assigned when the case was affirmed; and for reasons already stated, it is doubtful whether it was available as the record stood, without additional al-legations. And although it be admitted that those against whom, as being parties in this Court the affirm-ance was decreed, are precluded forever afterwards from assigning any error which either was or could have been assigned by them before, and though they may also be precluded from the benefit of a bill of review,

by which upon facts not appearing on the first record, but known to them during the whole progress of the suit, they may bring to light a new error not before apparent, it by no means follows that persons who were not parties should be thus precluded by the acts or omissions of those who were parties. This would be without just cause to deprive the omitted parties, and especially the present complainants, who had no knowledge of the proceeding, of all means of redress for the injustice committed against them. It would-take from them the very remedy which the statute intended them to have, and by the allowance of which it intends to re-reconcile its policy with its justice.

But 3d. An affirmance does not fix unalterably the rights of the parties, but only renders the decree irreversible by the party against whom it is affirmed, for any errors which he assigned, or might have assigned, or for any error arising on facts known, and which he might have introduced into the record. A judgment affirmed may be enjoined. After affirmance against one party, the opposite party has been allowed to reverse for errors assigned by him. After affirmance, a bill of review may be brought upon facts newly discovered. And we are not prepared to say that an affirmance gives any more validity or extent to a decree than it would acquire by such lapse of time as would bar a reversal. It is merely the judgment of the Court that upon the errors assigned the decree should not be reversed. A just and necessary policy extends its effect to all such errors as might have been assigned. But neither justice nor policy, nor the requisitions of the statute, require or allow that it should extend to the preclusion of those who, like the present complainants, were not parties to the proceeding in any stage, nor represented by parties, and who from ignorance and disability, actual as well as legal, could not make themselves parties, nor in any manner participate in the suit. As to them, the proceeding by which, without having had an opportunity of being heard, they are, and will ever be precluded, except by reversing it, from asserting their claim under a will once admitted to probate, is itself a newly dis-

A bill of review is not barred by an affirmance of a decree, upon facts newly discovered, or discovered since the affirmance.

W. & A. SINGLE-
TON
vs
SINGLETON et al.

covered fact; and as to the Court, the existence of the facts on which their interest and right to be parties, and the impropriety of omitting them depends, are alike new. They have not been, and could not have been, adjudicated by this Court, and therefore should not, when presented by persons in the attitude and character of the present complainants, be barred by its decree of affimance. We regard this bill then as standing essen-, tially upon the footing of a bill filed upon discovery of new facts which is not barred by an affirmance. And for this reason, as well as because the complainants were not parties, and the facts and errors now shown were never adjudicated, we think their bill is not barred. For reasons already adverted to, we think this the most appropriate, if not the only mode of seeking a reversal after an affirmance as in this case. And it seems to be the most just and convenient mode: 1st. Because the re-trial which it seeks may be more speedily had than if the case must first be brought to this Court. 2d. Because it might be shown by plea or answer, that the parties seeking a re-trial of the question, being competent to defend their rights, knew of the original proceeding, and though not formal parties, either participated in it, or having the opportunity of doing so, stood by and permitted others to defend for them; and that being thus virtually parties, they have had the benefit of the statute. In the first of which cases, and perhaps in the last, they would, as we are inclined to think, have no claim to the aid of a Court of equity. And 3d. Because on a bill like this, introducing new parties, asking in effect to have the benefit of the former proceedings and a new trial of the question therein decided, the Chancellor may, and should when there was no fraud in the first trial, impose such terms, as to the use of testimony formerly delivered in the suit, but since become inaccessible to the parties, as under the circumstances may be equitable.

Wherefore, the decree dismissing the bill in this case,

The Chancellor permitting the filing a bill of review, or bill in the nature of a

is reversed, and the cause is remanded, with directions to set aside the decree referred to in said bill, and to cause the present complainants to be made parties to

the former bill and proceedings, and a re-trial to be had by jury, on the issue prescribed by the statute as to the writing offered to be proved as the will of Jeconias Singleton, upon the terms that the testimony used on the former trial, of such witnesses as cannot be had on the re-trial, may be proved and used by either party, subject to legal exceptions as to the competency of the witness and of the matter detailed.

*Clay, Morehead & Reed and Hewitt* for appellants; *Crittenden, Owsley & Goodloe and J. T. Morehead* for appellees.

bill of review, should put the complainant under such terms as will insure justice between all concerned, allowing such testimony to be used as had become inaccessible to the parties.