Davis, &c.
vs.
Wood, &c.

Case 12.                M. Davis and others, of color, *vs*. Wood, &c.

Ord. Pet.                    APPEAL FROM LOGAN CIRCUIT.

1. "Item. I give and bequeath to my son, Thomas Davis, jr., legal heirs, one negro girl named Beck, aged fourteen years. Its my will and desire that said negro Beck, and all her offspring, shall be set free from all bondage at forty years of age." Under this clause in the will, which is an independent clause so far as it is concerned—Held, that though Beck died before she arrived at the age of forty, that when the period did arrive at which she would have been forty years old, all her offspring were entitled to their freedom.

2. A distinction exists between a devise to take effect upon an event uncertain not only as to its happening at all, but also as to the time when it may happen, and an event which, though it be uncertain whether it may ever happen, yet if it happen at all must happen at a certain period. (*Briscoe's devisees vs. Wickliffe*, 6 *Dana*. 163, and authorities there referred to; *Danforth's adm'r vs. Talbot*, 7 *B. Monroe*. 623.) The testator in this case had reference to the point of time when Beck would be forty years old, and not to her actually living up to that day.

3. It will not be presumed, in the construction of a will, that the testator intended to do an illegal act—as to create a perpetuity—when another construction can be given to the devise.

[The facts of the case are stated in the opinion of the court.—Rep.]

*J. Harlan* for appellants—

Regarding the statements contained in the petition as true, the question is presented to this court, whether the plaintiffs are not entitled to relief.

Thomas Davis, of Montgomery county in this state, made his will, dated February 19, 1801, which was admitted to record at the March term of the county court of the same year, which (amongst other things) contained the following clause: "1 give and bequeath unto my son, Thomas Davis, jr., legal heirs, one negro girl named Beck, aged fourteen years.— *Its* my will and desire that said negro Beck, and all her offspring, shall be set free from all bondage at forty years of age."

The agreement, to which reference has been made, admits that Beck was the property of Thomas Davis at his death, and that she died in the spring of the year 1819 or 1820.

The petition alledges that Beck gave birth to a female child named *Sicily*, about the year 1803 or 1804. That after she grew to be a woman she had several children, and some of them have children. The plaintiffs in this action are descendants of Sicily— some children and others grand-children. And whether they are entitled to their freedom depends on the legal construction which this court may give to the quoted clause of the will of Thomas Davis.

The word "offspring" is synonymous with children. Such, I think, is the meaning attached to it by the testator. The testator intended that Beck should serve the children of his son Thomas until she was forty years old; and then she, together with her children, or offspring, if any she had, should be set free "from all bondage." That is the plain, obvious and common sense meaning of the language used.

This case is similar to *Hart vs. Fanny Ann*, 6 *Mon.* 49. The devise in that case is in these words:

"And all the rest of my slaves, by name Alsey, Lucy, Anne, Selina and Turner shall be emancipated, with their children, if they should have any, as soon as they severally arrive at thirty years of age, except the last mentioned, and by name Turner, who shall serve Jerh. Davis until he is twenty-one years of age, and then be free."

The court decided that the children went free with their mothers, and that the thirty years did not apply to the children.

It is supposed that the opinion of this court in MS., of *Delia vs Hays*, is analagous to this case. Upon an examination of the will of Dowdell, and the opinion of this court, it will be seen the cases are very dissimilar. Not only the slaves the testator had disposed, but those "*that are yet to come,*" were to be freed from bondage and slavery at thirty-one years

of age. The time at which those to be born there-
after were to become free, was fixed at thirty-one
years.

In this case, the evident meaning of the testator
was that the offspring of Beck were to be free when
the time of her liberation arrived.

The circuit court dismissed the plaintiffs' petition
because the contingency upon which Beck was to be
free never arrived, to-wit, her arrival at the age of
forty years. The opinion of this court in *Fanny vs.
Bryant*, is an answer to that position. Beck was
fourteen years old the 19th February, 1801, and she
was to be free when she arrived to the age of forty
years, which would be 19th February, 1827. If the
testator had said that Beck and her *offspring*, or *in-
crease*, were to be free the 19th February, 1827, it
would be precisely the case of *Fanny vs. Bryant.*—
But is there any difference in principle between the
cases? Is there any difference between a note pay-
able January 1st, 1855, and one payable five years
from January 1, 1850? The offspring of Beck be-
came free the 19th February 1827, that being twen-
ty-six years from 19th February, 1801.

I think, therefore, the judgment of the circuit judge
dismissing the petition of plaintiffs should be revers-
ed, and cause remanded with directions to grant the
relief prayed for.

*A. G. Rhea* on the same side—

1. The controversy arises upon the construction of
a clause in the will of Thomas Davis, made in Mont-
gomery county, Kentucky, in 1801. The clause is
in these words: "I give and bequeath unto my son,
Thomas Davis, jr., legal heirs, one negro girl, Beck,
aged fourteen years. Its my will and desire that said
negro Beck, and all her offspring, shall be set free
from all bondage at forty years of age."

The plaintiffs, claiming freedom, are the descend-
ants of Beck, she having died before attaining the
age of forty.

The counsel for appellants insist on the following propositions:

1. That the testator, by providing for the future emancipation of all his slaves, has manifested a disapprobation of the principles of slavery, and that is manifested throughout the will.

2. That the true intent and meaning of the language used by the testator is, that when the period arrived at which Beck would be forty years old, she and her offspring should "be set free from all bondage;" and giving the devise that construction, the appellants are free, and the decision of the circuit court is erroneous.

Any other construction will frustrate the benign intentions of the testator to give freedom to all his slaves. If it be construed to mean that the offspring shall respectively be free at forty years old, it may be several centuries before the last will go out.— (*Hart vs. Fanny Ann*, 6 *Monroe*, 49.)

3. The offspring of Beck had a vested right to freedom as soon as they were born; the enjoyment thereof, however, to be postponed until the time at which Beck would be forty years old, if she should live, to-wit, 19th February, 1827. The death of Beck could not divest them of their right of freedom.

4. The testator did not intend to create a perpetuity, and to hold the offspring of Beck in bondage until they *respectively* attain the age of forty, would be a perpetuity, which the court will not do by construction. (See *B. Monroe*, 471.)

That the testator had a right to dispose of the future offspring of Beck there can be no doubt. (*Fanny vs. Bryant*, 4 *J. J. Marsh.* 468.)

The court is referred to the case of *Delia vs. Hays*, 15 *B. Monroe*.

We contend, for appellants, that the circuit court erred in refusing a decree to appellants for their freedom.

*Ewing & Bowling* and *Edwards* and *Underwood* for appellees—

The appellees contend that the appellants are slaves for life, and that the decree of the circuit court is correct, for the following reasons:

1. When the will of Davis was written Beck was only fourteen years old; she was sixteen or seventeen years old when Sicily, who is the mother and grandmother of plaintiffs, was born; by the will the children and grand-children of Beck were not entitled to freedom until each of them was forty years of age. If there could be any doubt upon the clause providing for the freedom of Beck, the third and fourth clauses show what is the proper construction. The fourth clause reads thus: "I give and bequeath to my son, Rezin Davis, one negro boy named Aaron, aged eighteen years; also, one negro named Isaac, aged two years; also, one negro girl named Jude, aged one year. And it is my will and desire, that negro Aaron, and negro Isaac, and Jude, and Jude's offspring, shall be free from all bondage at forty years of age." By the use of the conjunction *and*, it would be impossible to say, from any grammatical construction of the sentence, that the offspring should be free when the mother, Jude, arrived at the age of forty, because it has reference, and the same connection, to Aaron and Isaac; and there is the same right to conclude that the offspring should be free when one or both the boys reached the age of forty, as when their mother was forty. We refer the court to the opinion of *Delia vs. Hays*, of 19th December, 1854.

2. The appellants' right to freedom was made dependent upon Beck's arriving at the age of forty; that age she never reached, and hence no right to freedom attached. It would have been as easy for the testator to have given the right to freedom without, as with the contingency; but he saw proper to add the contingency, and we think the court cannot disregard it.

3. The plaintiffs cannot succeed. The mother of the plaintiffs was not born for two or three years after the death of the testator. Beck was most certainly a slave until she was forty years old; her daughter, Sicily, was born while Beck was yet a slave. Negroes not in being are not the negroes of a testator, nor subject to be emancipated. The offspring of a slave is a slave, and after-acquired freedom cannot have relation back and free the children of one who is a slave, at their birth. (*Jameson vs. Emeline*. 5 *Dana*, 201 ; 8 *B. Monroe*, 60.)

We think the opinion of the circuit court should be affirmed.

Chief Justice MARSHALL delivered the opinion of the court:

Matilda Davis and some twenty others, persons of color, claiming to be the descendants of Beck, formerly the property of Thomas Davis, filed this petition to assert and establish their freedom, against Wood and others, holding them in bondage. It is admitted that Beck was the property of Thomas Davis at his death, and that she died in 1819 or 1820. The genealogy of the plaintiffs claiming to be descended from her may also be assumed.

The right to freedom is asserted under the will of Thomas Davis, dated the 19th of February, 1801, and admitted to record in March of the same year. It contains the following clause, on the construction of which the right of freedom depends: "Item. I give and bequeath to my son, Thomas Davis, junior, legal heirs, one negro girl named Beck, aged fourteen years. It's my will and desire that said negro Beck, and all her offspring, shall be set free from all bondage at forty years of age."

Of this clause, which, so far as regards the girl Beck, is entirely independent of every other in the will, several constructions are suggested. It is contended, on the one side, that Beck and all her offspring were to be free when she should or would be forty years of age; and that the clause is in effect

June 21.

1. "Item. I give and bequeath to my son, Thos. Davis, jr. legal heirs, one negro girl named Beck, aged fourteen years. It's my will and desire that said negro Beck, and all her offspring, shall be set free from all bondage at forty years of age." Under this clause of the will, which is an independent clause so far as it is concerned— Held, that tho' Beck died before she arrived at the age of forty, that when the period did arrive at which she whould have been forty years old, all her offspring were entitled to their freedom.

DAVIS, &c.
vs.
WOOD, &c.

the same as if the testator had said, "it's my will that Beck and all her offspring shall be set free in 1827," at which time Beck, if living, would, according to the statement of her age in the will, be forty years old. On the other hand, it is contended that the true meaning of the clause is, that Beck and her offspring should be free when they severally attained the age of forty years, and not when Beck should attain that age; and further, that if the will were that Beck and her offspring shall be free when Beck is forty years of age, the entire gift of freedom would depend upon Beck's arriving at that age, and that as she did not live to be forty years old, the condition on which the devise depends did not happen, and neither Beck nor her offspring ever became entitled to freedom.

But whether the testator intended that Beck and her offspring should be free when Beck should attain forty years of age, or at her age of forty years, or that Beck and her offspring should be free when they severally attained that age, or at their respective ages of forty years, we think the attainment of that age by Beck herself was not a condition precedent to the freedom of her offspring, and that although her death under the age designated necessarily prevented her enjoyment of the freedom devised to her, it did not affect the devise to her offspring.

2. A distinction exits between a devise to take effect upon an event uncertain, not only as to its happening at all, but also as to the time when it may happen, and an event which, though it be uncertain whether it may ever happen, yet if it happen at all must happen at a certain period. (Bris-

That such reference to the age of a devisee is not a condition precedent, was in effect decided with respect to a devise of property to a capable devisee, "when arrived at a designated age," in *Danforth vs. Talbot's adm'r.* 7 *B. Monroe,* 623, and this upon the distinction recognized in the previous case of *Briscoe's devisees vs. Wickliffe,* 6 *Dana,* 162–3, and sustained by authorities referred to, between a devise to take effect upon an event uncertain, not only as to its happening at all, but also as to the time when it may happen, and one which is to take effect upon an event which, though it be uncertain whether it will ever happen, must happen, if at all, at a certain and definite period. The marriage of a designated indi-

vidual is a contingency of the former kind; the same individual's arrival at twenty-one or any other age is one of the latter description.

In the case referred to it is said, that "the law, in ascertaining the intention of the testator, (in making a devise of the latter sort,) may regard him as looking only to the point of time when the event referred to would certainly happen, if at all, and not to the happening of the event, and that the devise might be construed as referring to a certain time which must come, and thus being uncontingent be effectual to convey an immediate vested interest." This distinction, and the principle founded on it, seem to be entirely applicable to the present case. The testator designing the freedom of all of Beck's offspring, could scarcely have intended to make it subject to be defeated by a casualty which might prevent its enjoyment by Beck alone. Indeed, he seems to have regarded Beck's arrival at forty years of age as certain. And if, as said in *Danforth vs. Talbot's adm'r.* on the authority of *Fearne on Remainders*, 553–4, there are cases in which the law considers the event of the legatees attaining a certain age as fixed, and not contingent, this would seem to be one of them.

This conclusion, and the reasons and authorities on which it is founded, tend to support the assumption that the testator intended that this devise should take effect at a particular time, fixed by reference to the age of Beck, instead of by naming the year itself, which might have been ascertained by calculation. And certainly if he had said Beck and all her offspring shall be set free in 1827, or in February, 1827, the right of the plaintiffs would have been indisputable.

If the intention was that Beck and her offspring in successive generations remaining in slavery until they respectively attained the age of forty years, should then be free, this would not only be an illegal and ineffectual devise, because it attempts to create a perpetuity, but would also present the inconsisten-

---

DAVIS, &c.
*vs.*
WOOD, &c.

coe's devisees vs. Wickliffe, 6 Dana, 163, and authorities there referred to; Danforth's administrator vs. Talbot, 7 B. Monroe, 623.) The testator in this case had reference to the point of time when Beck would be forty years old, and not to her actually living up to that day.

3. It will not be presumed, in the construction of a will, that the testator intended to do an illegal act, as to create a perpetuity, when an-

Davis, &c.
*vs.*
Wood, &c.

other construction can be given to the devise.

cy of attempting to place the offspring born in different generations after the mother by attaining the prescribed age would be free, on the same footing as the offspring born of the same mother, before they attained that age. As it cannot be doubted on the face of the devise that the testator intended all the offspring of Beck to be free at some period, it is not only allowable, but on principle is required by law, that so far as a reasonable interpretation of the devise will allow, this manifest intention shall be effectuated by construction, and that it shall not be defeated by an unnecessary construction which will make the devise void for illegality. An intention to do that which is illegal or impossible is not to be presumed.

Then, without changing the words by substituting a particular year for the designated age mentioned in the will, the question is, whether that age of forty years is to be understood as fixing the period at which Beck alone is to be free, or as fixing with reference to her age the period when she and all her offspring are to be free. Did the testator intend to treat Beck and her offspring separately, and to make so wide a distinction between them that while Beck after attaining the age of forty should be absolutely free for the remainder of her life, her issue, both immediate and remote, through all generations, should be slaves until each should arrive at the age of forty? If he had so intended, it would have been natural, as well as appropriate to have used some words denoting a separate application to each of the various persons described in the clause, of the age of forty years as the period of freedom for each. But there is no distributive word in the sentence. On the contrary, Beck and her offspring are connected by a copulative, which combines them as closely as may be, and the language used furnishes no plausible ground for separating them, but in the fact that but one age is mentioned at which Beck and her offspring are to be free. Beck had no offspring at the time, but might

be expected to have in future. She then represented her future offspring as being part of herself. She was visible to the testator and present to his mind. Her offspring was but a probable incident of her nature and capacities, referred to in the clause, because, unless mentioned, they would be slaves though she might become free. And being at the time identical in fact, and in the first part of the sentence united by words, the last words should not be understood as referring to them severally, and thus have the effect of separating them in fate and condition, unless by the laws of the language and the structure of the sentence such an application of the last words be clearly necessary, and the intention to separate Beck and her offspring in this gift of freedom to all be thus demonstrated. For it is to be observed that the only evidence of an intention that Beck and her offspring shall have their freedom at different periods, is found or produced by referring the age mentioned as the period of freedom, to each of the persons who may at any time and in all time be included in the words "and all her offspring."

By a very easy and allowable transposition, the clause would read, "it's my will that Beck shall be set free at the age of forty years, and all her offspring." In this collocation of the words, we think there could be no doubt that the offspring were treated as an incident coupled with and to share the fate of Beck, the principal subject with reference to whose age the period was fixed for the freedom of all. The same thing would be scarcely less clear if the words *and all her offspring* were in parenthesis. And it so happens, that although there is no parenthesis, there is, in the transcript before us, a comma immediately before and after these words, which, if purposely made in the original will, would be equivalent to a parenthesis, and showing that the words "forty years of age" were intended to apply exclusively to the age of Beck, at which she and all her offspring were to be free.

But without laying particular stress upon these marks, which may have been accidentally or unadvisedly made, we recur to the transposition above suggested, and remark that it presents almost precisely the same clause as was produced by transposition in the case of *Hart vs. Fanny Ann*, 6 *Monroe*, 49.

The original clause in the case referred to was this: "And all the rest of my slaves by name Alsey, Lucy, Anna, Selina, and Turner, shall be emancipated, with their children, if they should have any, as soon as they severally arrive at thirty years of age, except Turner." The transposition made the sentence read thus: "Alsey, Lucy, Anna, and Selina shall be emancipated as soon as they shall severally arrive at thirty years of age, with their children, if they should have any." The court, in that case, says: "The words with their children, as placed in the sentence, (meaning, of course, the original,) denote and describe the children as appendages to, as in company of, and in connection with their mothers, in the act of emancipation, to be performed when their mothers severally arrive at the age of thirty." The word *and* could scarcely have been deemed less significant or potential than the word *with*. In that case the question was whether the words severally arrive at thirty, &c. related to the mothers only, of whom there were four, or to the children as well as the mothers, and thus designated the age (thirty years) at which each was to be emancipated

Here there is but one mother, or ancestor, who, and her offspring, are to be set free. And the clause, after describing her as a girl fourteen years of age, says she and her offspring shall be free at the age of forty. At whose age of forty? We think it is at Beck's age of forty years. If the offspring had been viewed separately and independently, we think there would have been some indication of this, at least by the words *their age or ages of forty*. There being no such indication, we think the words and all her off-

spring, as placed in the sentence, may be regarded as the nearly similar words were regarded in the case of *Fanny Ann, supra*. And as the words as they severally arrive at the age of thirty, were, in that case, confined to the mothers, so as to relieve the children from the condition of age as applicable to themselves, and to emancipate them when their respective mothers arrived at the age mentioned, the case seems to be substantially the same in principle as that before us, except that the words *with their* (*or her*) children were used in that case, and the words *and all her offspring* in this. The difference is between the words "and" and "with."

The case of *Delia vs. Hay's,* (*MS. opin. December,* 1854.) is not analogous to this. In that case the devise was, "I also will and desire that all my negroes that I have disposed of, as well as those that are yet to come, be freed from bondage and slavery at thirty-one years of age." He had in a previous clause said that "all his negroes, after the death of his wife, that shall have arrived at the age of thirty-one years, shall be freed from slavery and bondage at the death of his wife." The court decided that such as were embraced in the words "those yet to come" were not free until they severally arrived at the age of thirty-one years, and that the clause was not intended to apply to any born after the testator's death. As to this latter point, there is in the present case no question. And as to the first, if the clause freed "those to come after" at all, it freed them only as they severally arrived at the age mentioned in the clause itself. There is no reference which can fix another period, and nothing to show that the testator identified or connected them with their respective mothers.

There are other clauses in the will of Davis by which he emancipates other slaves, one of which only, is referred to on the part of the defendants as showing the impropriety of so construing the clause now in question as to make the emancipation of

Beck and her offspring a single or simultaneous act. In the clause referred to for this purpose, the testator, after devising to his son, Resin Davis, one negro boy, Aaron, aged eighteen years; also, one named Isaac, aged two years; and one negro girl named Jude, aged one year, says: "And it is my will and desire that negro Aaron, and negro Isaac, and Jude, and Jude's offspring, shall be free from all bondage at forty years of age." The argument is, that if the age of forty years should not be applied distributively to Beck and her offspring in the first clause, the same rule of construction should prevent its being so applied in the last, or, in other words, if, in the first clause, including Beck and her offspring, all are to be emancipated when she arrives, or would arrive, at the age prescribed, the same principle or rule of construction would emancipate all who may be included in the other clause, when one of them, say the oldest, should or would arrive at the age mentioned. But there is no analogy or resemblance between the two clauses, except so far as the last relates to Jude and her offspring. On the contrary, the last clause, so far as it relates to Aaron, and Isaac, and Jude is in perfect contrast with the first, inasmuch as the three are separately named, and elaborately distinguished from each other, without reference to any natural connection between them. The copulatives between them are inoperative except to show gramatically that each is included in the previous devise to the son, and each referred to in the following words of emancipation. There was no identity nor physical union. They could not even in idea be embodied in one person. They were regarded separately by the testator, and are so treated in the clause itself. And by the rule of construction, _reddendo singula singulis_, applicable in such a case, the words of emancipation must necessarily apply and be referred to them separately.

But where were Jude's or where were Beck's offspring? Certainly no where, unless in their bodies

and capacities, and so united and identified with themselves that it was only in imagination and by anticipation that they could be viewed separately. They were necessarily mentioned because it was intended that they should be free. But there is nothing to indicate that they were distinguished from the females named from whom they might proceed, and with whom, at the date of the will, they were identical, except for the purpose of securing their freedom if they should ever come into being. There is nothing to show that in reference to the right or act of emancipation they were separately considered. They are not by any words disjoined from their assumed ancestors then carrying them in their bodies, but are as closely connected as by language they could be. There is nothing to call for or to denote the application of the rule, *reddendo singula singulis,* because there is nothing to denote separation or severalty in the mention of the offspring. And in our opinion, so far is this last clause from furnishing an argument against the construction which refers the emancipation of the living ancestor and the expected offspring to one period fixed by reference to the age of the ancestor, it illustrates and supports that construction, by presenting a case in which, while it is perfectly certain that as to the three slaves who are in being and separately named, all must admit that neither of them is to be emancipated until he or she attains the age of forty years, it must also be admitted by all that there is at least a doubt whether each individual, of the offspring mentioned with the females, must arrive at the same age, or whether the offspring of each is not to be emancipated collectively when their respective ancestors shall, if living, attain it, and with them if alive.

We think the most that can be said against this last construction of the clause now in question, and of others like it in the will, is that it is not absolutely certain whether the testator meant that the girl and her offspring shall be emancipated at her age of

forty years, or at their age or ages of forty years, which might leave the offspring in slavery after their mothers were free. It may not be unimportant to observe that in no single instance does the testator, in devising his female slaves as property, mention their offspring or increase as a part of the gift to the devisee, but in every instance couples the offspring with the named ancestor in the devise of freedom. It is also suggested in argument that in no instance does he use the word slave or slaves, but always negro or negroes. These departures from what is usual, though ineffectual to determine the legal condition and rights of the parties, may throw some light upon the motives and opinions of the testator, and afford some inference as to his intention. To all of these considerations we may add, that even if the grammatical structure of the clause in question may not make it perfectly clear that the right of freedom of Beck and her offspring were to be determined with reference to Beck's age of forty years, that is the impression which it would produce in a common mind, and sustained as that construction is by the considerations to which we have adverted, we feel authorized to conclude that it is in accordance with the actual intention of the testator.

The fact that the same age of forty years seems to be the period of emancipation as to all the slaves in being, furnishes scarcely a slight inference that the same age was intended to apply to those born after the testator's death. The similar fact in the case of *Hart vs. Fanny Ann* seems to have been disregarded. But although the plaintiffs are free, and some of them have been so for a considerable length of time, we are of opinion, upon the facts of this case, that they are not entitled to recover hire against the defendants.

Wherefore, the judgment dismissing the petition is reversed, and the cause is remanded for a decree establishing the freedom of the plaintiffs, and for

such other proceedings and decree thereon as may be equitable, and not inconsistent with this opinion.

[A petition for re-hearing was filed, but overruled.—REP.]